Ryan Adams, #150778
Fir Law Group, LLC
PO Box 35
Silverton, Oregon 97381
Telephone: (503) 383-1640
Email: Ryan@FirLawGroup.com

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **MARY MARTIN**, individually, and on behalf of all others similarly situated, | Case No.:  3:26-cv-433 |
| Plaintiffs, | **COMPLAINT** |
| v. | (Injunctive and Declaratory Relief; 42 U.S.C. §§1983 and 1988; Violation of the Americans with Disabilities Act) |
| **TOBIAS READ**, in his official capacity as Secretary of State for the State of Oregon, | Jury Trial Requested |
| Defendant. | |

///

///

///

///

///

///

///

Page 1 of 14 – COMPLAINT

## I.   INTRODUCTION

1.       The central purpose of the First Amendment "is to give to every voting member of the body politic the fullest possible participation in the understanding of those problems with which the citizens of a self-governing society must deal...." A. Meiklejohn, Political Freedom: The Constitutional Powers of the People 75 (1960).

2.       Oregon is the "gold standard" when it comes to making sure that elections are fair and accessible.



Fir Law Group
PO Box 35
Silverton, Oregon 97381
(503) 383-1640

3.      On September 29, 2025, the Oregon Legislature passed House Bill (HB) 3991. Despite its emergency clause provisions, Governor Tina Kotek waited 39 days before signing the bill into law on November 7, 2025.

4.      HB 3991 enacted a transportation funding package that increased the state gas tax from $0.40 to $0.46 per gallon effective January 1, 2026, nearly doubled vehicle registration and title fees, and temporarily doubled the payroll tax for public transit from 0.1% to 0.2%. Ostensibly, the Governor delayed signing because she desired to shorten the time frame for any initiative petition that would put HB 3991 on the ballot for voters to decide.

5.      Citizens of Oregon, led by State Representative Ed Diehl, State Senator Bruce Star, and Jason Williams of Taxpayers Association of Oregon responded by launching Referendum Petition 2026-302 (the No Tax Oregon campaign), a veto referendum to challenge and refer the key tax and fee provisions of HB 3991 to the voters.

6.      By December 31, 2025, petitioners submitted over 250,000 signatures in support of the referendum, well above the 78,116 required.

7.      The over 250,000 citizens of Oregon who signed petitions, did so under the belief that the referendum would be voted upon at the November 3, 2026 general election.

8.      The Secretary of State verified and qualified the petition on December 30, 2025, with 163,451 valid signatures, placing it on the November 3, 2026, general election ballot and immediately pausing the challenged tax increases.[1]

_____

[1] Notably, the Secretary of State stopped counting and verifying signatures once it was mathematically clear that sufficient valid signatures had been submitted to qualify the measure for the November 2026 ballot with statistical certainty. As a result, although more than 250,000 signatures were turned in, only the necessary amount were fully counted and verified to confirm qualification.

Page 3 of 14 – COMPLAINT

9.     During the 2026 short legislative session, Senate Bill (SB) 1599A was introduced to move the referendum vote from the November 2026 general election to the May 19, 2026 primary election. The Senate passed SB 1599A on February 23, 2026.

10.     On January 27, 2026, the Oregon Secretary of State's office issued a formal memorandum recommending that any legislation moving Referendum Petition 2026-302 ("the Referendum") to the May 19, 2026, primary election must include an emergency clause and be signed into law by Governor Tina Kotek no later than February 25, 2026. This deadline ensured time to print ballots for overseas voters and provided the public at least 10 business days to submit arguments for the state voters' pamphlet without paying the $1,200 filing fee. Exhibit 1.

11.     When the February 25, 2026 deadline passed without SB 1599 being enacted, Secretary of State Tobias Read emailed legislative leaders the same day warning that every additional day of delay would compress statutory timelines. Exhibit 2. Read stated that this would make it "more challenging for my office to provide Oregonians with a free alternative to paying a $1,200 fee to file statements about the referendum in the voters' pamphlet," potentially limiting "Oregonians' ability to make an informed decision about the referendum and for proponents or opponents to make their voices heard." *Id*.

12.     Notwithstanding the Defendant's concerns, The House passed SB 1599A on March 2, 2026 and Governor Kotek signed it into law the same day.  Exhibit 3.

13.     The Oregon Elections Division is required to produce a state voters' pamphlet for all elections where a state ballot measure will be voted on. *See* ORS 251.026, ORS 251.185, and the State Voters' Pamphlet Manual (page 5).

14.     Under ORS 251.285, the Secretary of State "shall" include, *inter alia*, arguments for or against the measure filed with the Secretary of State. For the May 2026 primary election,

Page 4 of 14 – COMPLAINT

all information required to be included in the state voters' pamphlet for a measure must be filed by March 12, 2026, at 5:00:00 pm.

15.    Pursuant to ORS 251.255, if an individual desires to submit an argument, they must pay $1,200 or gather 500 signatures.

16.    The Secretary of State has no authority to modify ORS 251.255 to waive the statutory fee of $1,200. This court, in accordance with *Ex parte Young*, 209 U.S. 123 (1908), may order the Defendant to accept arguments for inclusion in the May 2026 Voter's Pamphlet, notwithstanding ORS 251.255.

17.    On March 4, 2026, the Defendant caused to be published and filed, a temporary administrative rule, requiring all arguments to be submitted by March 12, 2026. Exhibit 4.

## II.    JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 2201(a).

19.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1). Defendant is the Secretary of State for the State of Oregon and is sued in his official capacity. The State of Oregon is a resident of this district, and a substantial part of the events or omissions giving rise to this Complaint occurred and continue to occur within the District of Oregon.

///

///

///

///

Page 5 of 14 – COMPLAINT

## III. PARTIES

20.     Plaintiff Mary Martin is a 73-year-old woman and Oregon resident who resides in Klamath Falls, Oregon. She uses a wheelchair due to severe mobility impairments and qualifies as an individual with a disability under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class"), defined as: All low-income and/or disabled Oregon voters who wish to submit a ballot argument for or against Referendum Petition 2026-302 in the official Voters' Pamphlet but are unable to pay the $1,200 fee and cannot realistically gather 500 original wet-ink signatures by March 12, 2026 due to indigency, disability, geographic location, or other barriers.

21.     The Class satisfies Fed. R. Civ. P. 23(a) and (b)(2): it is so numerous that joinder is impracticable; there are questions of law and fact common to the Class; Plaintiff's claims are typical; Plaintiff and her counsel will fairly and adequately protect the Class; and Defendant has acted (and refused to act) on grounds generally applicable to the Class, making final injunctive and declaratory relief appropriate for the Class as a whole.

22.     Defendant Tobias Read is the Secretary of State of the State of Oregon and is sued herein in his official capacity. As Oregon's chief elections officer under ORS 246.110, Defendant Read is responsible for the administration and supervision of all state elections, including the qualification and placement of citizen referenda on the ballot, the production of the Voters' Pamphlet, and the enforcement of laws governing the timing and conduct of elections, including Senate Bill 1599A.

///

///

Page 6 of 14 – COMPLAINT

## IV. BACKGROUND

23.     Plaintiff was an integral leader in the No Tax Oregon campaign. She personally organized and participated in gathering signatures for Referendum Petition 2026-302, contributing hundreds of valid signatures over a 60-day period despite her physical limitations.

24.     Plaintiff lives on a fixed income of $1,400 per month consisting solely of Social Security disability widow benefits. Plaintiff has drafted and desires to submit an argument supporting the repeal of HB 3991, however, she cannot afford the $1,200 fee required by ORS 251.255.

25.     Because of her mobility and age-related health issues, Plaintiff cannot realistically gather the 500 verified signatures required under ORS 251.255 as the statutory alternative to the $1,200 fee. This is particularly true given the extremely compressed timeline created by SB 1599A and the Defendant.

26.     SB 1599A, signed into law on March 2, 2026, overrides the normal statutory deadlines and requires that arguments for the Voters' Pamphlet be filed by a date set by the Secretary of State. Exhibit 3. On March 4, 2026, the Secretary of State set that date as March 12, 2026. Exhibit 4.

27.     Assuming the Plaintiff worked 8 hour days from now until March 12 (which she is physically incapable of doing), she would have only around 56 hours to gather 500 signatures. In reality, Plaintiff would need to gather at least 600 signatures, as it is routine for the Secretary of State to invalidate 20% of signatures gathered based on various administrative requirements.

28.     The compressed timeline gives proponents and opponents only a matter of days to either pay $1,200 or collect and verify 500 signatures. This renders the "alternative" means of

Page 7 of 14 – COMPLAINT

access contemplated in ORS 251.255 illusory for low-income and disabled citizens such as Plaintiff.

29.    While the Legislature could have modified the fee provisions in ORS 251.255, they failed to do so, and therefore failed to account for those with a more challenged economic station or with physical limitations.

30.    The rushed process was explicitly warned against by Defendant Read and his office prior to enactment. On January 27, 2026, the Secretary's office advised that any move to the May 2026 primary "must" include safeguards to preserve the 10-business-day free-argument window. Exhibit 1.

31.    On February 25, 2026, Defendant Read again warned legislative leaders that further delay would "make it more challenging… to provide Oregonians with a free alternative to paying a $1,200 fee" and would limit "Oregonians' ability to make an informed decision." Exhibit 2.

32.    Despite these warnings, the Legislature and Governor enacted SB 1599A without accommodations. Exhibit 3.

33.    As a direct and proximate result of SB 1599A's compressed timeline and fee requirement, Plaintiff is effectively excluded from submitting her ballot argument to the Voters' Pamphlet which is the statutorily designated official channel for informing voters about Referendum Petition 2026-302.

///

///

///

///

Page 8 of 14 – COMPLAINT

## V.  CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

*(Violation of the First Amendment – Core Political Speech – 42 U.S.C. § 1983)*

34.     Plaintiff re-alleges and incorporates by reference paragraphs 1–33 above.

35.     The Voters' Pamphlet is the primary, government-sponsored medium through which Oregon voters receive arguments for and against ballot measures. Submission of an argument is core political speech protected by the First Amendment.

36.     By permitting individuals to submit ballot arguments for publication in the voter's information pamphlet, the Secretary of State has created a forum for the exercise of political expression.

37.     SB 1599A and ORS 251.255, as applied to Plaintiff and all others similarly situated, impose a severe burden on her right to engage in core political speech by conditioning access to the Voters' Pamphlet on either payment of a $1,200 fee she cannot afford or the gathering of 500 signatures that her disability and the compressed timeline make impossible.

38.     Under the framework established in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), this Court must weigh the character and magnitude of the burden against the state's asserted interests.

39.     Here, the burden is severe and falls disproportionately on indigent and disabled citizens. The state's interest in administrative convenience and speed does not justify the exclusion of Plaintiff's voice and all other voices similarly situated. Further, the Governor's interest in keeping an unpopular tax off of the same ballot she will appear on this November does not override Plaintiff's (and those similarly situated) right to be heard.

Page 9 of 14 – COMPLAINT

40.     Plaintiff therefore requests an order from this Court declaring that SB 1599 is unconstitutional as applied, and in violation of Plaintiff's (and all others similarly situated) first amendment rights pursuant to 42 U.S.C. §1983. Plaintiff further seeks nominal damages of $1 or such other amount as a jury may award, and an award of reasonable attorney fees and costs pursuant to 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF

*(Violation of the Fourteenth Amendment – Equal Protection – Wealth Discrimination)*

*(42 U.S.C. § 1983)*

41.     Plaintiff re-alleges and incorporates by reference paragraphs 1–40 above.

42.     By requiring either a $1,200 payment or 500 signatures within an impossibly short window, SB 1599A and ORS 251.255 draw a line based on wealth and/or physical ability that denies equal access to the electoral process. This is unconstitutional under the Equal Protection Clause.

43.     The U.S. Supreme Court has repeatedly held that wealth-based barriers to ballot-related participation violate equal protection when reasonable alternatives are absent. *Lubin v. Panish*, 415 U.S. 709, 718 (1974) ("in the absence of reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require… the payment of a filing fee"); *Bullock v. Carter*, 405 U.S. 134 (1972) (striking down candidate filing fees that excluded the poor); *Harper v. Virginia Board of Elections*, 383 U.S. 663 (1966) (wealth cannot be an electoral standard).

///

Page 10 of 14 – COMPLAINT

44.     The most directly analogous precedent is *Gebert v. Patterson*, 186 Cal. App. 3d 868 (1986), in which the California Court of Appeals struck down a virtually identical fee requirement for submission of a ballot argument in a voters' pamphlet. The court held that requiring prepayment of printing costs as a precondition to publication violated federal and state equal protection guarantees, analogizing directly to *Lubin* and *Bullock*. The court emphasized that the voters' pamphlet constitutes a limited public forum for core political speech, and indigents must be afforded a realistic, fee-free alternative.

45.     Here, as in *Gebert*, the statutory "alternative" of gathering signatures has been rendered meaningless by SB 1599's timeline, the Secretary of State's March 12, 2026 deadline, and Plaintiff's documented disability. The fee therefore operates as an unconstitutional wealth barrier.

46.     Plaintiff therefore requests an order from this Court declaring that SB 1599A and the Secretary of State's Temporary Administrative Rule (Exhibit 4) implementing a March 12, 2026 deadline is unconstitutional as applied, and in violation of Plaintiff's (and all others similarly situated) fourteenth amendment rights pursuant to 42 U.S.C. §1983. Plaintiff further seeks nominal damages of $1 or such other amount as a jury may award, and an award of reasonable attorney fees and costs pursuant to 42 U.S.C. §1988.

///

///

///

///

///

///

Page 11 of 14 – COMPLAINT

**THIRD CLAIM FOR RELIEF**

*(Violation of Title II of the Americans with Disabilities Act – Failure to Accommodate)*

*(42 U.S.C. § 12132)*

47.     Plaintiff re-alleges and incorporates by reference paragraphs 1–46 above.

48.     The administration of the Voters' Pamphlet and the election process are "services, programs, or activities" of a public entity within the meaning of the ADA.

49.     Defendant's rigid application of the fee-or-500-signatures rule (Exhibit 4), without reasonable modifications for Plaintiff's mobility disability and the compressed timeline, denies her (and all others similarly situated) equal access and constitutes discrimination on the basis of her disability.

50.     The Legislature failed to account for all of those persons like plaintiff with disabilities and challenged economic status when enacting SB 1599 without a fee waiver. Because the Secretary of State does not have the statutory authority to grant a waiver of the fee under ORS 251.255, any request for accommodation with respect to a fee waiver is illusory and futile.

51.     Further, because the Secretary of State has already ordered that all arguments must be submitted by March 12, 2026 to meet statutory timelines, a request for a reasonable accommodation with respect to an extension of time is also illusory and futile.

52.     Plaintiff therefore requests an order from this Court declaring that SB 1599 (Exhibit 3) and the Secretary of State's Temporary Administrative Rule (Exhibit 4) implementing a March 12, 2026 deadline is unconstitutional and discriminatory as applied, and in violation of Plaintiff's (and all others similarly situated) rights under 42 U.S.C. 12132.

Page 12 of 14 – COMPLAINT

Plaintiff further seeks an award of reasonable costs and attorney fees pursuant to 29 U.S.C.

§794a(b).

## FOURTH CLAIM FOR RELIEF

*(Request for a Declaratory Judgment)*

*(28 U.S.C. § 2201)*

53.     Plaintiff re-alleges and incorporates by reference paragraphs 1–52 above.

54.     Based upon the above, Defendant has violated Plaintiff's (and all others similarly

situated) First and Fourteenth amendment rights under the United States Constitution. Further,

Plaintiff has unlawfully discriminated against Plaintiff (and all others similarly situated) in

contravention of 42 U.S.C. 12132.

55.     This court is authorized to enjoin any action by a state or state actor that violates

the United States Constitution or the laws of these United States. *Ex parte Young*, 209 U.S. 123

(1908). Plaintiff and all others similarly situated are entitled to preliminary and permanent

injunctive relief barring the actions challenged herein.

56.     Pursuant to 28 U.S.C. § 2201, Plaintiff and all those similarly situated are also

entitled to a declaration that the actions challenged herein violate their First and Fourteenth

Amendment rights under the United States Constitution and are discriminatory under 42 U.S.C.

12132.

///

///

///

Page 13 of 14 – COMPLAINT

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment and relief as follows:

1.    A declaratory judgment that ORS 251.255, SB 1599A, and the Secretary of State's Temporary Administrative Rule (Exhibit 4) implementing a March 12, 2026 deadline is unconstitutional as applied to Plaintiff, and those similarly situated, and in violation of the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. 12132.

2.    A preliminary and permanent injunction requiring Defendant Read to accept an argument from Plaintiff, and those similarly situated, for publication in the May 2026 Oregon Voter's Pamphlet without the requirement of a fee payment or signature gathering quota;

3.    In addition, or in the alternative to the above Section 2 contained in this Prayer for Relief, a preliminary and permanent injunction precluding Defendant Read from moving the Referendum from the November 2026 ballot to the May 2026 ballot;

4.    Nominal damages in the amount of $1, and an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 29 U.S.C. §794a(b); and

5.    Such other and further relief as the Court deems just and proper.

**DATED** this 5th day of March, 2026.

Respectfully submitted,

**FIR LAW GROUP**

/s/ *Ryan Adams*
Ryan Adams, OSB 150778
Fir Law Group
PO Box 35
Silverton, OR 97381
(503) 383-1640
ryan@firlawgroup.com
*Counsel for Plaintiffs*

Page 14 of 14 – COMPLAINT

 

# MEMORANDUM

**TO:**      Tobias Read, Oregon Secretary of State

**FROM:**   Michael Kaplan, Oregon Deputy Secretary of State

**DATE:**    January 27, 2026

**SUBJECT:** Rescheduling a Qualified State Ballot Measure

Pursuant to Article IV, section 1(4)(c) of the Oregon Constitution, state measures qualified for the ballot via the initiative or referendum petition process are placed on the general election ballot unless otherwise ordered by the Legislative Assembly. When the Legislative Assembly ("legislature") orders that a measure scheduled to appear on the general election ballot be placed on the primary election ballot, it must consider processes and timelines to meet deadlines associated with conducting a uniform and accurate election.

We understand that the legislature may consider a bill in the upcoming session that would reschedule a qualified state ballot measure to the May 2026 primary election. This memorandum addresses, at a high level, the timelines and implications of such legislation.

## RESCHEDULING TO THE PRIMARY ELECTION

The existing statutory framework in ORS chapters 250, 251, and 254 contemplates that some state measures will appear on the primary election ballot. As such, applicable statutes contain specific deadlines.

### *Certified Ballot*

For each primary, general, and special statewide election, the Elections Division issues a certified ballot, which is the final and authoritative document provided by the Elections Division to county elections officials outlining what state contests, candidates, and measures will appear on the ballot for an election. Pursuant to ORS 254.085, the certified ballot must be delivered to counties by the 61st date before the election. For the May 2026 primary election, that deadline is March 19, 2026.

The certified ballot "shall" contain the following information about each state ballot measure:

- The measure's number assigned by the Elections Division under ORS 250.115;
- The latest ballot title certified by the Attorney General under ORS 250.067 or, where applicable, the Oregon Supreme Court under ORS 250.085; and



**Tobias Read**
*Oregon Secretary of State*

**Michael Kaplan**
*Deputy Secretary of State*

255 Capitol St NE, Ste 126
Salem, Oregon 97310
OregonVotes.gov

Exhibit 1, p. 1 of 5

Rescheduling a Qualified State Ballot Measure

Page 2

- Financial estimates drafted under ORS 250.125.

*See ORS 254.085(3).*

The ballot title of any state measure "shall" include the following elements[1]:

- A 15-word caption;
- A 25-word description explaining the results of a "yes" vote;
- A 25-word description explaining the results of a "no" vote; and
- A concise and impartial 125-word statement summarizing the measure and its major effect.

*See ORS 250.035(2).*

A financial estimate is required for any state measure that involves the expenditure or reduction of expenditure of public money or the reduction of revenues or raising of funds through taxation or indebtedness. *See ORS 250.125(1).* The financial estimate of a state measure is created by a committee consisting of the Secretary of State, the State Treasurer, the Director of the Department of Administrative Services, the Director of the Department of Revenue, and a local government representative with expertise in local government finance. *See ORS 250.125(10).* The financial estimate – or a statement that the state measure will have no financial effect – is printed both in the state voters' pamphlet and on the ballot. *See ORS 250.125(5)-(6).*

For measures appearing on the primary or general election ballot, the financial estimate (and/or any associated statements of financial effect) drafted under ORS 250.125 is required to be filed with the Secretary of State by the 99th day before the election. *See ORS 250.125(1), (7)-(8); ORS 250.127(1).* The Secretary of State is then required to give "reasonable statewide notice" of a hearing, to be held not later than the 95th day before the election, at which time any person may testify orally or in writing. The Secretary of State is also required to accept written comments on the financial estimate and/or statements before the hearing. *See ORS 250.127(2).* The committee then reconvenes and considers the feedback received before voting on and filing the final estimate and/or statements not later than the 90th day before the election. *See ORS 250.127(3)-(4).* Any petition that challenges the preparation, filing, or certification of a financial estimate or statement must be filed with the Supreme Court not later than the 85th day before the election. *See ORS 250.131.* Notably, if the financial estimate or statements are not

---

[1] A draft ballot title for Referendum Petition 2026-302 was received from the Attorney General on January 15, 2026. The public comment period will be open until 5 pm on January 30, 2026. If written comments are received, the Attorney General shall consider the comments and certify the draft (or a revised) ballot title on or before February 13, 2026. *See ORS 250.067(2)(a).* If no written comments are received, the Attorney General shall certify the draft ballot title on or before February 17, 2026. *See ORS 250.067(2)(b).* Any ballot title challenge must be filed with the Supreme Court within 10 business days of certification. *See ORS 250.085(3)(a).*

**Rescheduling a Qualified State Ballot Measure**

Page 3

timely filed or included in the certified ballot, the measure will appear on ballots and in the voters' pamphlet without the financial estimate or statements. *See ORS 250.127(7)-(8).*

*Voters' Pamphlet*

The Elections Division is required to produce a state voters' pamphlet for all elections where a state ballot measure will be voted on. *See ORS 251.026, ORS 251.185, and the State Voters' Pamphlet Manual (page 5).*

Under ORS 251.185, the Secretary of State "shall" include the following information about each state measure in the state voters' pamphlet:

- The measure's number assigned by the Elections Division under ORS 250.115;
- The ballot title of the measure (specific details outlined above);
- Financial estimates and any other statement prepared under ORS 250.125 (specific details outlined above);
- The explanatory statement under ORS 251.215;
- Arguments for and against the measure filed with the Secretary of State;
- A racial and ethnic impact statement prepared under ORS 137.685;[2] and
- A statement submitted for the measure by a citizen panel under ORS 250.141.[3]

The explanatory statement for a state measure is created by a citizen committee consisting of two proponents of the measure, two opponents of the measure, and a fifth member appointed by the existing committee members (or by the Secretary of State if committee members fail to appoint a fifth member).[4] For measures appearing on the primary or general election ballot, the explanatory statement drafted under ORS 251.215 is required to be filed with the Secretary of State by the 99th day before the election. The Secretary of State is then required to give "reasonable statewide notice" of a hearing, to be held not later than the 95th day before the election, at which any person may testify orally or in writing. The Secretary of State is also required to accept written comments on the explanatory statement before the hearing. *See ORS 251.215(2).* The committee then reconvenes and considers the feedback received before voting on and filing the original statement or any revised statement not later than the 90th day before the election. *See ORS 251.215(3)-(4).* Any petition that seeks a different explanatory statement must be filed with the Supreme Court not later than the 85th day before the election.

_____

[2] A racial and ethnic impact statement is only required to be prepared upon written request from a member of the Legislative Assembly from each major political party. This requires the Oregon Criminal Justice Commission to prepare a racial and ethnic impact statement for a state measure when it is related to crime and likely to have an effect on the criminal justice system.

[3] A Citizens Initiative Review statement is only filed if the Citizens' Initiative Review Commission has selected an initiative petition measure and filed the statement with the Secretary of State by the deadline set by rule.

[4] The process to convene the explanatory statement committee must begin not later than the 120th day before the election. *See ORS 251.205.*

Rescheduling a Qualified State Ballot Measure
Page 4

*See ORS 251.235(1); ORS 251.215(3).* Notably, if the explanatory statement is not timely filed, the measure will appear on ballots without an explanatory statement available for consideration in the state voters' pamphlet. *See ORS 251.230.*

Arguments for or against a state ballot measure may be filed supporting or opposing any state ballot measure. For a primary election, arguments may be filed not sooner than the 120th day and not later than the 68th day before the date of the primary election at which the measure is to be voted upon. *See ORS 251.255(1).* For the May 2026 primary election, all information required to be included in the state voters' pamphlet for a measure must be filed by March 12, 2026, at 5:00:00 pm.[5]

### *Deadlines for State Measure to Appear at the May 19, 2026, Primary Election*
As outlined above, the existing constitutional and statutory framework contemplates that state measures can appear on the primary election ballot and in the state voters' pamphlet.

To be included in the state voters' pamphlet for the primary election, the information relating to any state measure (including the measure number, certified ballot title, financial estimates and/or other financial effect statements, explanatory statement, and arguments for and against the measure) must be filed with the Secretary of State by **March 12, 2026**, at 5:00:00 pm. Shortly thereafter, the Secretary of State must deliver the certified ballot (to include the measure number, ballot title, and financial estimates) to counties by **March 19, 2026**.

The process to prepare the information contained in the voters' pamphlet and on the certified ballot is subject to intermediate statutory deadlines, one or more of which may have already elapsed for the May 2026 primary election.  But because these deadlines are statutory, they are presumably subject to change by the legislature.

If the legislature were to reschedule a qualified state measure to appear on the primary election ballot instead of the general election ballot, the act ordering the schedule change would need to include special timelines and provisions outlining how and when the following actions would occur:

-   Creation of the ballot title and the timeframe to resolve any court challenges, with the understanding that the drafting process is already underway;
-   Creation of the financial estimate and the timeframe to resolve any court challenges;
-   Creation of the explanatory statement and the timeframe to resolve any court challenges; and
-   Filing of measure arguments, considering that voters' pamphlet information could be filed under ORS 251.255(1) beginning as early as January 19, 2026, and filers will need time

---

[5] The state voters' pamphlet is required to be mailed to voters not later than April 29, 2026. *See ORS 251.175.*

Exhibit 1, p. 4 of 5

**Rescheduling a Qualified State Ballot Measure**
Page 5

to prepare and file arguments and possibly collect signatures in lieu of paying the filing fee. *See ORS 251.255(2)(a).*

### *Summary*

If the legislature reschedules a state measure to appear on the primary election ballot instead of the general election ballot, the act must also address related election processes.

To allow for timely, uniform, and orderly conduct of the primary election, the certified ballot title, financial estimate and/or statements, explanatory statement, and arguments for and against the measure must be received by the Elections Division no later than March 12, 2026, at 5:00:00 p.m. This will allow the Elections Division to meet its statutory deadline to issue a certified ballot to county election officials.

To allow submission of measure arguments for inclusion in the state voters' pamphlet, we recommend providing at least 10 business days for filers to submit filings. As such, any legislation to reschedule a state measure for the May 2026 primary election should have an emergency clause and be signed by the Governor not later than February 25, 2026. The Elections Division would begin accepting measure argument filings the next business day on February 26, 2026, through the state voters' pamphlet filing deadline of March 12, 2026, at 5:00:00 p.m.

### COST TO CONDUCT THE ELECTION

Who bears the cost to conduct an election depends on the type of election. The state does not typically reimburse counties for costs related to ballot measures regardless of the election the measure appears on, leaving the county elections offices to absorb those costs.[6] On at least one occasion, when the legislature ordered a special election exclusively for a ballot measure to be voted on, it appropriated funding to reimburse counties for the unexpected and unbudgeted costs.[7]

---

[6] ORS 246.179 only requires the state to reimburse counties for costs to conduct special elections involving US Senators, US Representatives, or the recall election of a state office holder.

[7] *See* Emergency Board certificate dated May 2018

Exhibit 1, p. 5 of 5

## Julie Parrish

| | |
|---|---|
| **From:** | Julie Parrish |
| **Sent:** | Wednesday, February 25, 2026 2:09 PM |
| **To:** | Julie Parrish |
| **Subject:** | Today's deadline |

---

**From:** READ Tobias * SOS <Tobias.READ@sos.oregon.gov>
**Sent:** Wednesday, February 25, 2026 9:44:30 AM
**To:** Sen Wagner <Sen.RobWagner@OregonLegislature.gov>; Rep Fahey <Rep.JulieFahey@oregonlegislature.gov>; Sen Jama <Sen.KayseJama@oregonlegislature.gov>; Sen Starr <Sen.BruceStarr@oregonlegislature.gov>; Rep Bowman <Rep.BenBowman@oregonlegislature.gov>; Rep Elmer <Rep.LucettaElmer@oregonlegislature.gov>
**Subject:** Today's deadline

**CAUTION: This email originated from outside the Legislature. Use caution clicking any links or attachments.**

Some people who received this message don't often get email from tobias.read@sos.oregon.gov.
Learn why this is important

President Wagner, Speaker Fahey, Leader Jama, Leader Starr, Leader Bowman, and Leader Elmer:

On January 28th, my office shared with you a memo about the process to reschedule a qualified ballot measure to the May 2026 primary election. I have attached it again to this email for your reference. I am writing to remind you about today's deadline for SB 1599 to be passed and signed into law. This is the deadline our team recommended to ensure that Oregonians have a fair and equal chance to participate in the voters' pamphlet process related to this referendum, should it be on the ballot in May.

Yes, you can still reschedule the referendum to May after today; however, every day that passes makes it more challenging for my office to provide Oregonians with a free alternative to paying a $1,200 fee to file statements about the referendum in the voters' pamphlet. This could impact Oregonians' ability to make an informed decision about the referendum and for proponents or opponents to make their voices heard. This signature gathering alternative makes sure money is not a barrier between Oregonians and their democracy. That's an Oregon value I know you all agree with. A shortened timeline for signature gathering and verification also creates a burden for the Elections Division – it will take a significant amount of staff time to verify these signatures before the March 12th deadline.

I strongly advise you to work with urgency to resolve this issue.

Exhibit 2, p. 1 of 2

TJR

**Tobias Read**

Oregon Secretary of State

Tobias.Read@sos.oregon.gov

sos.oregon.gov



2

83rd OREGON LEGISLATIVE ASSEMBLY--2026 Regular Session

Enrolled

# Senate Bill 1599

Sponsored by Senator WAGNER, Representative FAHEY

CHAPTER .................................................

AN ACT

Relating to a special election date for Referendum Petition 2026-302; and declaring an emergency.

**Be It Enacted by the People of the State of Oregon:**

**SECTION 1.** **The required number of signatures of Referendum Petition 2026-302 having been verified by the Secretary of State under ORS 250.105, the parts of chapter 1, Oregon Laws 2025 (special session), that are referred by Referendum Petition 2026-302 to the people under Article IV, section 1, of the Oregon Constitution, shall be submitted to the people for their approval or rejection at a special election held throughout this state on the same date as the primary election for 2026 set forth under ORS 254.056 (2).**

**SECTION 2.** Except as otherwise provided in sections 1 to 6 of this 2026 Act, ORS chapters 250, 251 and 254 apply to the special election held on the measure described in section 1 of this 2026 Act.

**SECTION 3.** ORS 250.085 applies to the ballot title prepared for the special election held on the measure described in section 1 of this 2026 Act, except that, if the Supreme Court review process has not been completed by March 12, 2026, the latest ballot title certified by the Attorney General shall be printed in the voters' pamphlet and on the ballot, as provided in ORS 250.067 (3).

**SECTION 4.** (1) Notwithstanding ORS 251.205, 251.215, 251.225, 251.230 and 251.235, the explanatory statement to be printed in the voters' pamphlet for the measure described in section 1 of this 2026 Act shall be prepared by a joint legislative committee created for this purpose. The explanatory statement shall be filed with the Secretary of State not later than March 12, 2026.

(2) Notwithstanding ORS 250.125, 250.127 and 250.131, the financial estimate to be printed in the voters' pamphlet for the measure described in section 1 of this 2026 Act shall be prepared by a joint legislative committee created for this purpose. The financial estimate shall be filed with the Secretary of State not later than March 12, 2026.

(3) The explanatory statement and the financial estimate prepared by the joint committee shall be the explanatory statement and financial estimate printed in the voters' pamphlet.

**SECTION 5.** (1) Arguments relating to the measure described in section 1 of this 2026 Act may be filed with the Secretary of State under ORS 251.255, except that an argument shall be filed not later than the date set by the Secretary of State by rule.

(2) Notwithstanding ORS 192.311 to 192.478 relating to public records, an argument filed under this section is exempt from public inspection until the fourth business day after the deadline for filing arguments.

Exhibit 3, p. 1 of 2

**SECTION 6.** ORS 137.685 applies to the preparation of any racial and ethnic impact statement for the measure described in section 1 of this 2026 Act, except that, notwithstanding ORS 137.685:

(1) The processes for preparing the statement may begin on the effective date of this 2026 Act; and

(2) The Secretary of State by rule shall establish a deadline for filing the statement with the secretary, provide for a hearing on the statement and for the submission of suggested changes to the statement, establish a deadline for filing any revised statement and establish the date by which the secretary shall certify any statement.

**SECTION 7.** This 2026 Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this 2026 Act takes effect on its passage.

————————

Passed by Senate February 23, 2026

.................................................................
Obadiah Rutledge, Secretary of Senate

.................................................................
Rob Wagner, President of Senate

Passed by House March 2, 2026

.................................................................
Julie Fahey, Speaker of House

Received by Governor:

.......................M.,........................................., 2026

Approved:

.......................M.,........................................., 2026

.................................................................
Tina Kotek, Governor

Filed in Office of Secretary of State:

.......................M.,........................................., 2026

.................................................................
Tobias Read, Secretary of State

Exhibit 3, p. 2 of 2

OFFICE OF THE SECRETARY OF STATE
TOBIAS READ
SECRETARY OF STATE

MICHAEL KAPLAN
DEPUTY SECRETARY OF STATE



ARCHIVES DIVISION
STEPHANIE CLARK
DIRECTOR

800 SUMMER STREET NE
SALEM, OR 97310
503-373-0701

# TEMPORARY ADMINISTRATIVE ORDER
INCLUDING STATEMENT OF NEED & JUSTIFICATION

## ELECT 5-2026
CHAPTER 165
**SECRETARY OF STATE**
**ELECTIONS DIVISION**

| FILED |
| --- |
| 03/04/2026 11:37 AM |
| ARCHIVES DIVISION |
| SECRETARY OF STATE |
| & LEGISLATIVE COUNSEL |

FILING CAPTION: Establishes filing process and deadline for Measure 120 arguments and statements.

EFFECTIVE DATE: 03/04/2026 THROUGH 08/30/2026

AGENCY APPROVED DATE: 03/03/2026

CONTACT: Coline Benson
503-986-1518
elections.sos@sos.oregon.gov

255 Capitol St NE
Ste 126
Salem, OR 97310

Filed By:
Coline Benson
Rules Coordinator

NEED FOR THE RULE(S):

This administrative rule is needed to comply with the requirements of SB 1599 which requires the Secretary of State to promulgate rules establishing the deadlines for measure argument filings and any racial and ethnic impact statement. This rule will provide the public with information needed to comply with applicable laws, rules, and deadlines governing this process and will allow the Secretary of State to obtain and maintain uniformity in the application and operation of the State Voters' Pamphlet filing, production, and translation process.

JUSTIFICATION OF TEMPORARY FILING:

SB 1599 contains an emergency clause and was signed into law by the Governor on March 2, 2026. The filing deadline for State Voters' Pamphlet filings is March 12, 2026, giving filers approximately nine days to file measure arguments. Failure to promulgate this rule will result in serious prejudice to the public interest because without it, filers will not have the information needed to comply with applicable laws, rules, and deadlines governing the measure argument and racial and ethnic impact statement process for Measure 120. Without this rule, the Secretary of State could not ensure uniformity in the application and operation of the voters' pamphlet filing, production, and translation process.

DOCUMENTS RELIED UPON, AND WHERE THEY ARE AVAILABLE:

SB 1599 (2026) available online at www.oregonlegislature.gov or from the Agency; State Voters' Pamphlet Manual revised 1/2026, available at www.oregonvotes.gov or from the Agency.

ADOPT: 165-016-9901

RULE TITLE: Filing Process and Deadlines for Measure 120 Arguments and Statements

RULE SUMMARY: Pursuant to SB 1599 (2026), this administrative rule establishes the procedures and deadlines for filing measure arguments for Measure 120. This rule also establishes the deadline for filing any racial and ethnic impact statement, conducting a public hearing, and certifying the statement.

RULE TEXT:
(1) Unless otherwise specified in Senate Bill 1599 (SB 1599) (2026), the Secretary of State designates the State Voters'

Exhibit 4, p. 1 of 2

Pamphlet Manual, revised 1/2026 and associated forms as the procedures and forms to be used to submit arguments for and against Measure 120, filer submitted translations allowed by statute, explanatory statements, financial estimates and statements, and statements prepared by the Legislative Counsel Committee under ORS 251.225. The State Voters' Pamphlet Manual is adopted by OAR 165-016-0000.

(2)(a) To obtain and maintain uniformity in the application and operation of the State Voters' Pamphlet filing, production, and translation process, the Secretary of State establishes March 12, 2026, at 5:00:00 p.m. as the deadline for filing arguments and statements outlined in section 1 of this administrative rule.

(b) The filing must be accompanied by the required filing fee or a completed voters' pamphlet petition having the required number of signatures in lieu of the filing fee.

(A) If filing by fee, the filing fee must be paid and received not later than 5:00:00 p.m. on March 12, 2026.

(B) If filing by petition in lieu of the filing fee, the petition must be filed and the signatures verified by the Secretary of State not later than 5:00:00 p.m. on March 12, 2026. The measure argument filer must ensure the petition is filed with sufficient time for the Secretary of State to verify the signatures prior to the filing deadline. The Secretary of State will verify petition signatures in the order received by filers.

(3) The joint legislative committee responsible for preparing the explanatory statement and financial estimate of the measure must supply written notification to the Elections Division of the ORESTAR account username, first and last name and contact information for the person chosen to file the statements electronically. Notification of designated filers must be delivered to the Elections Division via email to ORESTAR-support.sos@sos.oregon.gov not later than 5:00:00 p.m. on March 11, 2026.

(4) The following deadlines will apply if a member of the Legislative Assembly from each major political party requests the Oregon Criminal Justice Commission to prepare a racial and ethnic impact statement for Measure 120.

(a) The racial and ethnic impact statement must be filed with the Secretary of State no later than March 6, 2026 at 5:00:00 p.m.

(b) The Secretary of State will begin accepting written suggestions and any other information from members of the public on the date the racial and ethnic impact statement is filed. Those written comments must be delivered to the Elections Division via email to ORESTAR-support.sos@sos.oregon.gov or elections.sos@sos.oregon.gov.

(c) The Secretary of State will hold a hearing in Salem and accept written and oral suggestions and any other information from members of the public until the conclusion of the hearing. The hearing will be held on March 10, 2026.

(d) The commission may file a revised statement with the Secretary of State not later than March 12, 2026, at 5:00:00 p.m.

(e) The Secretary of State will certify the statement not later than March 13, 2026.


STATUTORY/OTHER AUTHORITY: ORS 246.150, ORS 251.014, ORS 251.055, ORS 251.167, ORS 251.170, ORS 251.255, SB 1599 (2026)

STATUTES/OTHER IMPLEMENTED: ORS 251.026, ORS 251.046, ORS 251.167, ORS 251.170, ORS 251.185, ORS 251.255, SB 1599 (2026), OAR 165-016-0000

Exhibit 4, p. 2 of 2