Ryan Adams, #150778
Fir Law Group, LLC
PO Box 35
Silverton, Oregon 97381
Telephone: (503) 383-1640
Email: Ryan@FirLawGroup.com

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **MARY MARTIN**, individually, and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>**TOBIAS READ**, in his official capacity as Secretary of State for the State of Oregon,<br><br>       Defendant. | Case No.: 3:26-cv-00433<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER** |

**MOTION**

Mary Martin, individually, and on behalf of all others similarly situated, moves under Federal Rule of Civil Procedure 65(b) for a temporary restraining order enjoining Defendant Secretary of State Tobias Read from requiring collection of the $1,200 fee required by ORS 251.255 and further enjoining the enforcement of the collection of 500 "wet ink" signatures in order to secure placement of an argument in the May 2026 Voters' Pamphlet in absence of a

Page 1 of 12 – MOTION FOR TEMPORARY RESTRAINING ORDER

$1,200 payment. Pursuant to LR 7-1(a)(1), conferral with the opposing party is not required. However, Plaintiff will email this motion to the Oregon Department of Justice immediately after it is filed.

## I.  INTRODUCTION

Oregon proudly holds itself out as the "gold standard" for fair and accessible elections.[1] Today, that standard is at risk.

Plaintiff, a 73-year-old widow, is in a wheelchair and subsists on a fixed income of $1,400 per month in social security widow's benefits. *See* Declaration of Mary Martin. Over the last year, Plaintiff worked hard to gather signatures to refer House Bill 3991 to Oregon voters in November of 2026. *Id*. Because of her work, she wants to submit an argument for inclusion in the Oregon Voters' Pamphlet. Plaintiff cannot submit a argument because she can neither afford to pay $1200, nor does she possess the physical capability to gather 500 signatures in seven days. *Id*.

On September 29, 2025, the Oregon Legislature passed House Bill 3991, enacting a major transportation funding package that raised the state gas tax from $0.40 to $0.46 per gallon effective January 1, 2026.[2] The bill also nearly doubled vehicle registration and title fees, and temporarily doubled the payroll tax for public transit.[3] Although the bill contained an emergency clause, Governor Tina Kotek waited 39 days before signing it into law on November 7, 2025.

---

[1] Tobias Read (orsostobiasread), Facebook, February 28, 2026 5:34 PM, https://www.facebook.com/ORSOSTobiasRead.
[2] https://olis.oregonlegislature.gov/liz/2025S1/Downloads/MeasureDocument/HB3991
[3] *Id*.

Page 2 of 12 – MOTION FOR TEMPORARY RESTRAINING ORDER

Citizens responded by launching Referendum Petition 2026-302—the "No Tax Oregon" campaign led by State Representative Ed Diehl and others.[4] Petitioners gathered more than 250,000 signatures, far exceeding the 78,116 required.[5] The Secretary of State verified and qualified the petition, placed it on the November 3, 2026 general election ballot, and immediately paused the challenged tax increases.[6]

During the 2026 short legislative session, Senate Bill 1599A was introduced and passed to move the referendum vote from the November 2026 general election to the May 19, 2026 primary election.[7] The Secretary of State's office had warned in a formal January 27, 2026 memorandum that any such move "must" include an emergency clause and be signed into law no later than February 25, 2026. See Complaint, Exhibit 1. That deadline was necessary to preserve at least ten business days for the public to submit arguments to the state Voters' Pamphlet without paying the $1,200 filing fee. *Id*. When the deadline passed, Secretary Tobias Read personally emailed legislative leaders on February 25, 2026, warning that every additional day of delay would compress statutory timelines, make it "more challenging" for his office to provide a free alternative to the $1,200 fee, and limit Oregonians' ability to make informed decisions and have their voices heard. *See* Declaration of Julie Parish, Exhibit 1.

---

[4] Statesman J., Thousands Submit Testimony Against Moving Vote on Oregon Gas Tax (Feb. 9, 2026), https://www.statesmanjournal.com/story/news/politics/2026/02/09/thousands-testify-against-moving-vote-on-oregon-gas-tax/88592522007.

[5] KATU, Oregon GOP Lawmakers File Lawsuit over Gas Tax Referendum Date Change (Mar. 2026), https://katu.com/news/politics/oregon-gop-lawmakers-file-lawsuit-over-gas-tax-referendum-date-change-taxpaters

[6] Tobias Read, Or. Sec'y of State, 2026 Referendum Petition #302 Certified Ballot Title (Feb. 6, 2026), https://content.govdelivery.com/accounts/ORSOS/bulletins/40828f6

[7] https://olis.oregonlegislature.gov/liz/2026R1/Downloads/MeasureDocument/SB1599

Page 3 of 12 – MOTION FOR TEMPORARY RESTRAINING ORDER

Notwithstanding these explicit warnings from the Defendant, the Legislature passed SB 1599A and Governor Kotek signed it on March 2, 2026. The Secretary then issued a temporary administrative rule setting March 12, 2026, at 5:00 PM as the absolute deadline for all Voters' Pamphlet arguments. *See* Complaint, Exhibit 4. Under ORS 251.255, anyone wishing to submit an argument must either pay $1,200 or gather 500 original "wet-ink" signatures. Even if the Secretary of State wanted to waive these fee requirements, he has no statutory authority to do so.

This artificially compressed timeline and financial barrier now threaten to silence the core political speech of low-income and disabled Oregonians who wish to participate in the official public debate over these significant tax increases. The Plaintiff, and all those similarly situated, have been foreclosed from full and fair participation in the democratic process, solely because of her financial status and physical limitation. *See* Declaration of Rep. Shelly Boshart Davis. For the reasons that follow, this Court must intervene.

## II.    LEGAL STANDARD

Because this Court is no doubt knowledgeable on the standards for a Temporary Restraining Order, Plaintiff will offer a truncated recitation for the record. A plaintiff seeking a temporary restraining order or preliminary injunction must establish four factors: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the government is the opposing party, the third and fourth factors merge, because the equities for the State are inseparable from the public interest. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The Ninth Circuit also applies a sliding-scale approach: a plaintiff who raises "serious questions going to the merits" and shows that the balance of hardships tips sharply in its favor

satisfies the first and third factors, provided the plaintiff also demonstrates a likelihood of irreparable injury. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). This standard is particularly appropriate here, where core First and Fourteenth Amendment rights and the integrity of Oregon's electoral process are at stake. The Plaintiffs have clearly raised serious questions.

### III.    ARGUMENT

A. **The Plaintiffs are likely to be successful on the merits of their case.**

  1. **The plaintiffs, while disabled and economically underprivileged, must be afforded the same rights as those who are economically privileged and physically unhindered.**

Oregon's "gold standard" elections are at risk. Plaintiff Mary Martin is a 73-year-old Oregonian living on $1,400 per month in Social Security widow's benefits who uses a wheelchair because of severe mobility impairments. *See* Declaration of Mary Martin. She brings this action on behalf of herself and all others similarly situated. *Id*.

Despite her profound physical limitations, Plaintiff was an integral leader in the No Tax Oregon campaign, personally organizing signature-gathering efforts and contributing hundreds of valid signatures over sixty days to qualify Referendum Petition 2026-302 for the ballot. *Id*. She has already drafted a powerful argument urging voters to repeal the gas-tax hikes, doubled vehicle fees, and payroll-tax increase in HB 3991. *Id*. Yet because of her fixed income she cannot pay the $1,200 filing fee, and because of her wheelchair and rural location in Klamath Falls she cannot possibly collect and verify 500 original "wet-ink" signatures in the seven days remaining before the Secretary's March 12 deadline. *Id*. Even if she were to work eight hours per day (which her health forbids) she would have only fifty hours working hours to gather the 500 signatures necessary to avoid the $1,200 fee. *Id*.

Page 5 of 12 – MOTION FOR TEMPORARY RESTRAINING ORDER

Ironically, the Defendant warned the Legislature twice in writing that this exact timeline would eliminate any realistic free-speech alternative. *See* Complaint, Ex.1; *see also* Declaration of Julie Parish, Exhibit 1. A week later, he is now enforcing a rule that permanently silences Mary Martin and thousands of other low-income and disabled voters just like her. *See* Declaration of Christine Drazan. This is not an abstract constitutional dispute. The state of Oregon is telling some of its most dedicated citizens that their voice will not be heard. In the instant case, a woman who literally wheeled herself into the fight to give other voters a voice will not be heard because of her financial status and disability.

## 2. Plaintiffs will prevail on their First Amendment claim because an argument in a Voters' Pamphlet is core political speech.

On the First Amendment claim, SB 1599A, ORS 251.255, and the Secretary's March 4, 2026 Temporary Administrative Rule impose a severe and unconstitutional burden on core political speech by conditioning access to the official Voters' Pamphlet.

The Voters' Pamphlet is the statutorily mandated government-created forum in which the Secretary "shall" publish arguments for and against ballot measures. ORS 251.285. Submission of an argument in the Voters' Pamphlet is quintessential core political speech entitled to the highest level of First Amendment protection. By creating and controlling this official channel for public debate on ballot measures, the State has opened a limited public forum that cannot be closed to indigent or disabled speakers through financial or logistical barriers that are anything but reasonable. Under the *Anderson-Burdick* framework, when a restriction imposes a severe burden on the right to engage in core political speech, strict scrutiny applies and the restriction survives only if it is narrowly tailored to serve a compelling state interest. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

Page 6 of 12 – MOTION FOR TEMPORARY RESTRAINING ORDER

Here, the burden is undeniably severe. On one hand, Plaintiff Martin is a 73-year-old wheelchair user living on $1,400 per month in Social Security disability benefits. She has already drafted her argument supporting repeal of HB 3991's tax increases, yet she cannot pay the fee and cannot realistically collect 500 verified signatures (or the 600+ needed to survive the Secretary's routine 20% invalidation rate) in the approximately 50 available working hours before the March 12 deadline. The Secretary himself twice warned the Legislature in writing that moving the referendum to the May primary without an emergency clause and a preserved 10-business-day free-argument window would "make it more challenging … to provide Oregonians with a free alternative to paying a $1,200 fee" and would limit "Oregonians' ability to make an informed decision about the referendum and for proponents or opponents to make their voices heard" *See* Complaint, Exhibit 1; *see also* Declaration of Julie Parrish, Exhibit 1.

On the other hand, the State's asserted interests in administrative convenience and printing deadlines cannot possibly justify the complete exclusion of Plaintiff Martin's voice and the voices of hundreds or thousands of other low-income and disabled citizens from the very pamphlet the State requires voters to receive. Because the burden is severe and the Defendant has already conceded the timeline destroys any realistic alternative, Plaintiffs are highly likely to prevail on their First Amendment claim.

### 3. Plaintiffs will prevail on their Fourteenth Amendment Equal Protection claim because the $1,200 fee requirement with no reasonable alternative imposes an unconstitutional wealth barrier to participation.

By conditioning access to the official Voters' Pamphlet on payment of a $1,200 fee or the collection of 500 original wet-ink signatures within an eight-day window, SB 1599A and ORS 251.255 create a wealth-based classification that denies low-income and disabled voters equal access to the electoral process. The Supreme Court has long held that wealth cannot be used as

Page 7 of 12 – MOTION FOR TEMPORARY RESTRAINING ORDER

an electoral standard absent reasonable alternative means of access. *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 666 (1966) (wealth is an impermissible electoral criterion); *Bullock v. Carter*, 405 U.S. 134 (1972) (striking down candidate filing fees that disproportionately excluded the poor); and *Lubin v. Panish*, 415 U.S. 709, 718 (1974) ("in the absence of reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require… the payment of a filing fee").

The most directly analogous and persuasive authority is *Gebert v. Patterson*, 186 Cal. App. 3d 868 (1986). In *Gebert*, the California Court of Appeals struck down a nearly identical statutory scheme that required individuals to pay printing costs to have arguments published in the official voters' pamphlet. The *Gebert* court held that the fee violated federal and state equal protection guarantees because it conditioned participation in a limited public forum for core political speech on the ability to pay, and it emphasized that "indigents must be afforded a realistic, fee-free alternative." *Id*. at 876. The court expressly analogized to *Lubin* and *Bullock* and rejected any notion that wealth could serve as a barrier to publication in the voters' pamphlet.

Here, the fee operates in exactly the same unconstitutional manner as in *Gebert*. Plaintiff Martin cannot pay the $1,200. The statutory "alternative" of gathering 500 signatures is wholly illusory given her wheelchair use, severe mobility impairments, rural location in Klamath Falls, and the Secretary's eight-day deadline. As discussed, this would leave Plaintiff, and those similarly situated, 50 working hours to gather signatures. This is a physical impossibility for Plaintiff. Further, the Defendant's office routinely invalidates approximately 20% of gathered signatures for administrative reasons. Thus, the Plaintiff would actually need to collect at least 600 signatures. The Defendant has created a wealth barrier with no realistic alternative for those

Page 8 of 12 – MOTION FOR TEMPORARY RESTRAINING ORDER

who are indigent or disabled. This is the <u>precise</u> situation *Gebert* and *Lubin* condemn. Therefore, because the scheme, as applied, functions as a pure wealth test without a meaningful alternative, Plaintiffs have an extremely strong likelihood of success on this claim.

> **4. The Plaintiffs will prevail because the Defendant has violated the Americans with Disabilities Act by failing to accommodate their disability.**

Plaintiffs are also highly likely to succeed on their Third Claim for Relief under Title II of the Americans with Disabilities Act. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. Implementing regulations further require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability," unless the modification would fundamentally alter the nature of the service. 28 C.F.R. § 35.130(b)(7). The preparation, administration, and distribution of the official Oregon Voters' Pamphlet is plainly a "service, program, or activity" of the Secretary of State, a public entity.

Plaintiff Mary Martin is a qualified individual with a disability. She has already been fully described herein. Here, any request for a reasonable accommodation, such as a fee waiver or brief extension of the March 12 filing deadline, would be futile because the Secretary of State has no statutory authority under ORS 251.255 to grant such relief even if he wanted to.

By refusing to make any reasonable modification to its rules to accommodate Plaintiff Martin's documented disability, despite the obvious futility of the existing alternatives, Defendant has violated Title II of the ADA. Plaintiffs therefore have a strong likelihood of success on this claim.

Page 9 of 12 – MOTION FOR TEMPORARY RESTRAINING ORDER

**B. Plaintiffs will suffer irreparable harm without entry of a Temporary Restraining Order.**

It is unnecessary to recapitulate the facts already stated above. It suffices to say that Plaintiffs desire to participate in the electoral process, but are foreclosed from doing so on the basis of their wealth and disability. If Defendant's order and collection of fees are allowed to stand, Plaintiffs will suffer irreparable harm because they will be totally and permanently excluded from full and fair participation in the electoral process.

The United States Supreme Court has repeatedly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (constitutional violations are presumptively irreparable); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (First Amendment harms are irreparable).

The harm here is especially severe. The Voters' Pamphlet must be printed and mailed to voters by late April 2026, and once printed, the exclusion of Plaintiffs' voices cannot be undone. Monetary damages or post-election relief are wholly inadequate. Without immediate injunctive relief, Plaintiffs' fundamental right to participate in the public debate over these significant tax increases will be forever lost, and Oregon voters will receive incomplete information on a referendum that directly affects their wallets. This irreparable constitutional injury strongly supports entry of a Temporary Restraining Order.

**C. Both the balance of the equities and the public interest tip sharply in Plaintiffs' favor and compel immediate entry of a Temporary Restraining Order.**

When the government is the opposing party, these two factors merge, and the State's interest is simply the public interest in enforcing its laws. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, that interest is minimal at best. Granting relief requires nothing more than allowing the Secretary to do what he already does every election cycle: accept written arguments for the Voters' Pamphlet, review them for compliance with content rules, and print them. The administrative burden of accepting additional arguments from low-income and disabled voters via email or mail, without a $1,200 fee or impossible signature requirement is negligible.

On the other side of the scale is the permanent and irreparable silencing of Plaintiff Mary Martin and other similarly situated low-income and disabled Oregonians who cannot pay the fee and cannot physically gather 500 wet-ink signatures in the seven days remaining before the Secretary's March 12 deadline. The public interest strongly favors Plaintiffs. Oregon prides itself on being the "gold standard" for accessible and transparent elections. The public has a profound interest in hearing all sides of a hotly contested referendum on major tax increases that affect every Oregonian's wallet. Suppressing the voices of the very citizens who qualified the measure (particularly low-income and disabled voters who are disproportionately affected by the tax hikes) undermines the integrity of the electoral process and deprives the electorate of balanced information in the statutorily mandated Voters' Pamphlet.

Constitutional rights and an informed electorate vastly outweigh any minimal administrative inconvenience to the Secretary. The equities and public interest therefore tip overwhelmingly in Plaintiffs' favor. Thus, a temporary restraining order and preliminary injunction should issue.

Page 11 of 12 – MOTION FOR TEMPORARY RESTRAINING ORDER

## IV.   CONCLUSION

If Oregon is to be the "gold standard" of elections, it's citizens must be informed and have opportunity to inform others. Because the Defendant lacks statutory authority to waive the $1,200 fee, the Court must intervene. Thus, for the foregoing reasons, the Court should enter a temporary restraining order enjoining Defendant Secretary of State Tobias Read from requiring collection of the $1,200 fee required by ORS 251.255 and further enjoining the enforcement of the collection of 500 "wet ink" signatures in order to secure placement of an argument in the May 2026 Voters' Pamphlet in absence of a $1,200 payment.

Respectfully submitted,

**FIR LAW GROUP**

/s/ <u>Ryan Adams</u>
Ryan Adams, OSB 150778
Fir Law Group
PO Box 35
Silverton, OR 97381
(503) 383-1640
ryan@firlawgroup.com
*Counsel for Plaintiffs*