DAN RAYFIELD
Attorney General
THOMAS H. CASTELLI #226448
JACOB REISBERG #202247
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  thomas.castelli@doj.oregon.gov
        jacob.reisberg@doj.oregon.gov

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| MARY MARTIN, individually, and on behalf of all others similarly situated, | Case No. 3:26-cv-433-SI |
| Plaintiffs, | DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER |
| v. | |
| TOBIAS READ, in his official capacity as Secretary of State for the State of Oregon, | |
| Defendant. | |

## RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER

### I.     INTRODUCTION

The legal issue before this Court is a narrow one: is Plaintiff likely to succeed on the

merits of her claims that the requirements of ORS § 251.255 for submitting an argument in a

voters' pamphlet violate Plaintiff's rights under the First Amendment, Fourteenth Amendment,

Page 1 -    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER

or Americans with Disabilities Act ("ADA"), given the timeline imposed by Or. S.B. 1599 (2026)? Because binding Ninth Circuit precedent makes clear that the answer is no, the motion for a temporary restraining order ("TRO") should be denied.

## II.    FACTUAL BACKGROUND

Oregon law requires that any person filing a measure argument for inclusion in the State Voters' Pamphlet must either pay a $1,200 fee or submit a petition containing the signatures of 500 active electors, each of whom must attest that they have read and agree with the argument they are endorsing. ORS § 251.255(2)(a). Plaintiff seeks an order enjoining the Secretary of State from following these statutorily prescribed requirements. ECF 2 at 1-2. The Secretary of State does not have the authority under the statute to waive these requirements. *See* ORS § 251.255. To allow time for the Secretary of State's office to comply with its statutory duties leading up to the May 19 election (including signature verifications for submissions made pursuant to that option) measure arguments must be submitted to the Secretary of State via its electronic filing system no later than 5:00 pm on March 12, 2026.

## III.    LEGAL STANDARDS

The legal standard for issuing a TRO is essentially identical to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The grant of injunctive relief for a requested TRO or preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest. *Id.* at 20.

TC3/nk1/Martin 0433 PLD Def Resp to TRO 3-9 final

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## IV.     ARGUMENT

Plaintiff is not likely to succeed on the merits. Binding Ninth Circuit authority makes this clear for each of Plaintiff's claims.

**A.     THE FIRST AMENDMENT CLAIM FAILS BECAUSE ORS § 251.255 SERVES SIGNIFICANT STATE INTERESTS, IS NARROWLY TAILORED, AND LEAVES OPEN AMPLE ALTERNATIVE CHANNELS OF COMMUNICATION.**

A voter pamphlet is a "limited public forum" for the purposes of the First Amendment. *Kaplan v. Cnty. of Los Angeles*, 894 F.2d 1076, 1080 (9th Cir. 1990) (holding that a "voter's pamphlet constitutes a limited public forum"). A limited public forum "refer[s] to a type of nonpublic forum that the government has intentionally opened to certain groups or to certain topics." *Cogswell v. City of Seattle*, 347 F.3d 809, 814 (2003) (quoting *Hopper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001)). Plaintiff acknowledges in the Complaint and Motion for TRO that the voter pamphlet at issue in this case is a limited public forum. ECF 1 at 11, ECF 2 at 6. Plaintiff does not, however, cite the correct legal standard for determining whether a restriction to access a limited public forum violates the First Amendment.[1]

Limited public forum restrictions that are content-neutral (such as those imposed by ORS § 251.255) must "serve a significant state interest in a narrowly tailored fashion and leave open ample alternative channels of communication." *Kaplan v. Cnty. of Los Angeles*, 894 F.2d 1076, 1080 (9th Cir. 1990) (citing *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983)).[2] *Kaplan* makes clear that Plaintiff is not likely to succeed on the merits of her First Amendment claim.

---

[1] Plaintiff cites a test described in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and in *Burdick v. Takushi*, 504 U.S. 428 (1992), but neither case involved a limited public forum. Instead, *Anderson* addressed ballot-access requirements for presidential candidates. 460 U.S. at 780. *Burdick* addressed a prohibition on write-in voting. 504 U.S. at 430. The framework described in those cases is inapplicable here.

[2] The Ninth Circuit has also held that for "limited public fora, a lenient reasonableness standard applies to determine the validity of governmental regulations." *Cogswell v. City of Seattle*, 347 F.3d 809, 814 (9th Cir. 2003). This brief applies the more stringent standard articulated by *Kaplan*.

Page 3 -    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER

The panel in *Kaplan* held that a voters' pamphlet is a limited public forum "created for the specific purpose of communication and one in which the costs of creating and utilizing that public forum are easily determined." *Kaplan*, 894 F.2d at 1081. The court emphasized that "it does not violate the First Amendment for a public entity to collect charges that fairly reflect costs incurred by the municipality in connection with an activity involving expression." *Id.* In *Kaplan*, the fees were far greater than those at issue here: candidates were charged their "proportionate share" of the costs of producing the pamphlet: $52,000 for the primary and $27,500 for the general election. *Id.* at 1080–81. Yet the panel held that there was "no violation of the First Amendment in this cost recovery system." *Id.* at 1081.

The panel explained their rationale, and analyzed whether the restriction served a significant state interest in a narrowly tailored fashion and left open ample alternative channels of communication:

> The state's interest in publishing voter's pamphlets in a way that does not burden local agency budgets is a substantial interest. The statute is narrowly drawn in that the local agencies can recover actual costs alone, and cannot profit from the publication charges nor finance election costs with them. The statute exempts the indigent from cost liability and leaves open a variety of alternative means for a candidate to transmit his statement to voters. In light of these factors, we deem the cost recovery system constitutional under the First Amendment.

*Id.* Other Ninth Circuit cases have confirmed these principles: "*Kaplan* clearly disposes of [plaintiff's] claim to a First Amendment right to have his [candidate] statement published for free." *N.A.A.C.P., Los Angeles Branch v. Jones*, 131 F.3d 1317, 1322 (9th Cir. 1997) (no First Amendment violation for fee charged to candidates who could "not afford to pay" to have statement included in voter pamphlet because the charge "does not affect a candidate's ability to get his or her name on the ballot; nor does it affect the other means available to candidates to disseminate their views to the public")[3]; *Cogswell v. City of Seattle*, 347 F.3d 809, 818 (9th Cir.

---

[3] Although *Kaplan* considered a candidate's access to a limited public forum, *N.A.A.C.P., Los Angeles Branch* addressed the First Amendment rights of both candidates and voters and held that voter-plaintiffs had "no greater rights than the candidates." 131 F.3d at 1322. In that case, the voters argued that the restriction on access to the limited public forum violated their rights as listeners, but nothing in the

Page 4 -    DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
TC3/nk1/Martin 0433 PLD Def Resp to TRO 3-9 final

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

2003) (holding that a restriction prohibiting candidates from referring to their opponents in statements to be included in the voters' pamphlet was not a violation of the First Amendment).

While the panel in *Kaplan* expressly noted that the statute at issue exempted the indigent from cost liability as one factor in its analysis, the analysis did not turn on this fact. The election code at issue in *Kaplan* permitted indigent candidates to submit a statement without prepayment, but the Ninth Circuit specifically noted that the agency could still "bill the candidate his or her actual pro rata share of the cost after the election." 894 F.2d at 1080. This pro rata share was also a significantly higher dollar-value than the fee at issue here. There is no indication in *Kaplan* that the presence of an indigency provision was essential to the holding; rather, the panel upheld the system because it satisfied the governing test for limited public fora. *Id.* at 1081. The difficulties Plaintiff identifies with the signature alternative in a compressed election cycle therefore do not transform a facially neutral, longstanding filing rule into a First Amendment violation under *Kaplan's* limited-public-forum framework.

Plaintiff is therefore not likely to succeed on the merits of her claim that the requirements of ORS § 251.255 are unconstitutional under the First Amendment as applied to her or similarly situated plaintiffs, even given the timeline set by S.B. 1599. The State of Oregon has a substantial interest to "obtain and maintain uniformity in the application and operation of the State Voters' Pamphlet filing, production, and translation process[.]" ECF 1 at 25. The State of Oregon has a substantial interest in defraying the cost of publishing voters' pamphlets by charging a fee. In fact, increased cost defrayment was the legislature's goal when it enacted the present fee schedule in 2009. Staff Measure Summary, Senate Committee on Rules, SB 776-A, June 10, 2009.

All filing fees, including the $1,200 fee for measure argument filings, indirectly subsidize voters' pamphlet production costs. Dawson Declaration at 3. The value of the subsidy diminishes

---

opinion suggests that a voter–speaker (like Plaintiff in this case) would have greater rights than either a candidate–speaker or a voter–listener.

TC3/nk1/Martin 0433 PLD Def Resp to TRO 3-9 final

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

each year as the cost to produce the voters' pamphlet increases. *Id.* In 2024, when the Secretary of State published two voters' pamphlets (one for the primary election and one for the general election), filing fees covered 30% and 37% of the total production costs of those pamphlets. *Id.* The fee at issue in this case is much lower than the fee in *Kaplan* but still helps the State recover costs.[4] The signature gathering alternative in the statute – which is an alternative to all voters' pamphlet filing fees – generally allows individuals who are indigent or otherwise unable to pay to participate in the limited public forum.

The requirements of ORS § 251.255 also represent the State's substantial interest in managing the space and integrity of the voter pamphlet. In a recent election, five state measures generated 225 measure argument filings, which took up 88 pages in the State Voters' Pamphlet. Dawson Declaration at 3. The most contentious measure alone generated 103 measure argument filings. *Id.* But if the fee and signature requirement for such filings were both waived, the Secretary of State could reasonably expect to receive a higher volume of measure arguments, yielding a larger overall pamphlet. *Id.* That would not only increase costs, but would also make it much more difficult for the Secretary of State to adhere to its production schedule and meet its contract deadlines with vendors. *Id.* Complying with internal production timelines, and the printing and mailing constraints that follow, are also important governmental interests.

Finally, there are "ample alternative channels of communication" for individuals to speak their mind on ballot measures. ORS § 251.255 does not prohibit an individual from availing themselves of traditional public fora for speech. Plaintiff may publish her opinion on personal websites, social media, print and broadcast media, letters to the editor, community meetings, direct-mail communications, and other grassroots activities. The restrictions of ORS § 251.255

---

[4] The fee here may be low enough to be "nominal." The Supreme Court has held that a nominal fee may be charged "to gain access to a limited public forum." *Kaplan*, 894 F.2d at 1081 (citing *Cox v. New Hampshire*, 312 U.S. 569 (1941)).

Page 6 -   DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER

therefore "serve a significant state interest in a narrowly tailored fashion and leave open ample

alternative channels of communication" and are constitutionally permissible.

## B.    THE EQUAL PROTECTION CLAIM FAILS BECAUSE ORS § 251.255 DOES NOT BURDEN A SUSPECT CLASS OR A FUNDAMENTAL RIGHT.

Plaintiff is not likely to succeed on the merits of her Equal Protection claim. When

analyzing an Equal Protection claim, heightened scrutiny is applied only when a restriction

burdens a suspect class or a fundamental right. *San Antonio Independent School Dist. v.*

*Rodriguez*, 411 U.S. 1, 17 (1973). Without heightened scrutiny, a distinction need be only

rationally related to a legitimate purpose. *McGinnis v. Royster*, 410 U.S. 263, 270 (1973). Degree

of wealth is not a suspect class under Equal Protection caselaw. *Harris v. McRae*, 448 U.S. 297,

322–23 (1980).[5] The ability to publish a statement in a limited public forum is not a fundamental

right:

> Plaintiffs do not allege that they are denied their right to vote or that their votes are
> diluted, but rather that their ability to influence others prior to voting is diminished by
> their lack of wealth. There is no authority for the Equal Protection claim plaintiffs make
> here-namely, the right of each voter to have equal access to the campaigning process. The
> voters have not shown any fundamental right that is burdened by California's judicial
> election process.

*N.A.A.C.P., Los Angeles Branch*, 131 F.3d at 1322.

Plaintiff's Equal Protection theory fails for the same reason the Ninth Circuit rejected

similar claims in *N.A.A.C.P., Los Angeles Branch*. Plaintiff does not allege that she is denied the

right to vote or that her vote will be diluted. She asserts that her ability to influence other voters

is diminished because she cannot afford or is otherwise unable to use one particular channel of

communication. ECF 2 at 7. *N.A.A.C.P., Los Angeles Branch* made clear that there is no

---

[5] Plaintiff also mentions physical ability in their Equal Protection claim for relief. ECF 1 at 10. The Ninth
Circuit has held that the "physically disabled are not a protected class for purposes of equal protection
under the Fourteenth Amendment." *Gamble v. City of Escondido*, 104 F.3d 300, 307 (9th Cir. 1997). The
analysis is therefore the same as for wealth discrimination in that the rational basis test applies. *Id.*

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

constitutional right to participate in the electoral campaigning process on equal financial footing with others. 131 F.3d at 1322. *N.A.A.C.P., Los Angeles Branch* drew on *Kaplan* to reach this conclusion, as there was an equal protection claim that was dismissed in *Kaplan* as well. 894 F.2d at 1082 (holding that "cost recovery system does not affect a candidate's access to the ballot or right to participate in an election" and was not a violation of the Equal Protection clause).

Plaintiff's strongest purported authority does not alter this analysis. *See Gebert v. Patterson*, 186 Cal. App. 3d 868 (Ct. App. 1986). *Gebert* is a California intermediate appellate decision and therefore nonbinding; more importantly, its reasoning is directly inconsistent with binding Ninth Circuit precedent. *Compare Gebert*, 186 Cal. App. 3d at 874 ("once the city has chosen to open a public forum, equal access must be provided to all competing factions") (emphasis added), with *N.A.A.C.P.*, 131 F.3d at 1324 ("[t]here is no authority for the Equal Protection claim plaintiffs make here—namely, the right of each voter to have equal access to the campaigning process.") (emphasis added). Given this conflict, *Gebert* carries no persuasive force in the face of controlling Ninth Circuit law.

The same conclusion follows here as it did in the applicable Ninth Circuit cases. ORS § 251.255 does not restrict ballot access nor the act of voting, and Plaintiff identifies no suspect class nor fundamental right that would trigger heightened scrutiny. The requirements of the statute are rationally related to a legitimate purpose including cost recovery, space management, and the orderly administration of election materials. Plaintiff is therefore not likely to succeed on the merits of her First Amendment claim.

## C.    THE ADA CLAIM FAILS BECAUSE PLAINTIFF WAS NOT EXCLUDED BY REASON OF HER DISABILITY.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. To prevail on a claim under this section, "a plaintiff must show:

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

(1) [they are] a "qualified individual with a disability"; (2) [they were] either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of [their] disability." *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Plaintiff argues that she is a qualified individual with a disability, and that "[b]y refusing to make any reasonable modification to its rules to accommodate Plaintiff Martin's documented disability, despite the obvious futility of the existing alternatives, Defendant has violated Title II of the ADA." ECF 2 at 9. This argument is foreclosed by Ninth Circuit precedent.

In *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, the panel held that the exclusion at issue was not based on the fact of plaintiff's disability, and that instead that the exclusion was based on financial circumstances:

> exclusion was based on [plaintiff's] failure to provide updated certification that he has a qualifying disability. <u>[Plaintiff's] inability to provide updated certification was due to his financial circumstances, not to his medical disability.</u> Thus, the MTA's recertification policy did not discriminate against [plaintiff] on the basis of disability, and the MTA is not required under the ADA or Rehabilitation Act to make reasonable modifications to the Program's eligibility requirements for [plaintiff].

114 F.3d 976, 979 (9th Cir. 1997) (emphasis added). Other cases confirm this principle. *See Martin v. California Dep't of Veterans Affs.*, 560 F.3d 1042, 1048 (9th Cir. 2009) (affirming where plaintiff "failed to establish violations of the ADA and the Rehabilitation Act because it could not prove that [plaintiff] was denied those services 'by reason of'" the disability).

TC3/nk1/Martin 0433 PLD Def Resp to TRO 3-9 final

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Plaintiff's alleged exclusion here was also not "based on" her disability. Her inability to use one of the options provided by ORS § 251.255, namely paying the $1,200 fee, results from her financial circumstances, not from any disability. The statute's signature gathering requirement is based on the permissible basis of managing the space and integrity of the voter pamphlet, not on the impermissible basis of disability discrimination. *Martin*, 560 F.3d at 1049 (defendant "made decisions on the permissible basis of the availability of adequate resources to care for an individual applicant, not on the impermissible basis of disability discrimination.").

## V.    PLAINTIFF HAS NOT SHOWN IRREPARABLE HARM

Plaintiff has not demonstrated irreparable harm. The asserted harm, at core, is the inability to use a State-created channel of communication without satisfying statutorily required filing conditions. Plaintiff remains fully able to advocate through numerous other channels of political expression.

## VI.    BALANCE OF EQUITIES AND PUBLIC HARM

The balance of equities and the public interest favor denying a TRO. The public interest favors following Oregon's enacted statutes and adhering to the hard printing and mailing deadlines necessary to ensure timely delivery of election materials to voters. Granting the TRO would require the Secretary to accept an undetermined number of fee-free pamphlet arguments in violation of ORS § 251.255 and could impose significant processing burdens. These burdens could undermine the fairness, predictability, and administrative feasibility of conducting Oregon's May 19, 2026 election.

TC3/nk1/Martin 0433 PLD Def Resp to TRO 3-9 final

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## VII.    CONCLUSION

The Defendant respectfully requests denial of TRO because Plaintiff is not likely to succeed on the merits, there is no irreparable harm, and the equities or the public interest do not favor extraordinary relief.

DATED March  09 , 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General

     *s/ Thomas H. Castelli*
THOMAS H. CASTELLI #226448
JACOB REISBERG #202247
Senior Assistants' Attorneys General
Trial Attorney
Tel (971) 673-1880
Fax (971) 673-5000
thomas.castelli@doj.oregon.gov
Jacob.Reisberg@doj.oregon.gov
Of Attorneys for Defendant

TC3/nk1/Martin 0433 PLD Def Resp to TRO 3-9 final

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## CERTIFICATE OF SERVICE

I certify that on March <u>09</u>, 2026, I served the foregoing **DEFENDANT'S RESPONSE**

**TO MOTION FOR TEMPORARY RESTRAINING ORDER** upon the parties hereto by the

method indicated below, and addressed to the following:

| | |
|---|---|
| Ryan Adams | ___ HAND DELIVERY |
| Fir Law Group | ___ MAIL DELIVERY |
| PO Box 35 | ___ OVERNIGHT MAIL |
| Silverton, OR   97381 | ___ TELECOPY (FAX) |
| *Of Attorneys for Plaintiff* | <u>X</u> E-SERVE |
| | <u>X</u> E-MAIL: |
| | ryan@firlawgroup.com |

<u>     *s/ Thomas H. Castelli*     </u>
THOMAS H. CASTELLI #226448
JACOB REISBERG #202247
Senior Assistants' Attorneys General
Trial Attorney
Tel (971) 673-1880
Fax (971) 673-5000
thomas.castelli@doj.oregon.gov
Jacob.Reisberg@doj.oregon.gov
Of Attorneys for Defendant

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000