Ryan Adams, #150778
Fir Law Group, LLC
PO Box 35
Silverton, Oregon 97381
Telephone: (503) 383-1640
Email: Ryan@FirLawGroup.com

*Of Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **MARY MARTIN**, individually, and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>**TOBIAS READ**, in his official capacity as Secretary of State for the State of Oregon,<br><br>          Defendant. | Case No.: 3:26-cv-00433-SI<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

## INTRODUCTION

The central issue in this case is whether there exists a reasonable fee alternative for those low-income and disabled Oregonians who wish to submit an argument for the Voters' Pamphlet but cannot pay $1,200 and are physically unable to gather 500 signatures in seven days. Plaintiffs

Page 1 of 10 – PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER

respectfully submit that, as applied, ORS 255.251(2)(a), SB 1599A, and the Defendant's temporary rule deprive them of a reasonable fee alternative.

The Plaintiffs' narrow request for relief at this stage of the proceeding neither asks, nor requires the Court to invalidate SB 1599A. Rather, because the compressed timeline of SB 1599A does not provide a reasonable amount of time for poor and disabled Oregonians to gather 500 signatures, we ask only that this Court waive the fee and signature requirement for those few and vulnerable among us who fall into this Class of Plaintiffs.

Defendant's Response does not address the reasonableness of SB 1599A as it applies to the Plaintiffs. Defendant relies primarily on two cases, *Kaplan v. Cnty. of Los Angeles*, 894 F.2d 1076 (9th Cir. 1990), and *N.A.A.C.P., Los Angeles Branch v. Jones*, 131 F.3d 1317 (9th Cir. 1997) to support the proposition that Plaintiffs' claims fail under the First and Fourteenth Amendments. For the reasons that follow, those cases are distinguishable and inapposite to the matter at hand. Therefore, we respectfully urge this Court to issue a narrow order restraining Defendant from charging Oregon's poor and disabled a $1,200 fee or requiring 500 signatures as a prerequisite for including an argument in the Oregon Voters' Pamphlet.

## I.     *Kaplan* and *N.A.A.C.P., Los Angeles Branch* are inapposite to this case.

Defendant treats this motion as a routine application of ORS 251.255. It is not. This is not a facial challenge to ORS 251.255 or to SB 1599A. Rather, this is a narrow *as-applied* challenge to how the $1,200 fee and 500-signature requirement operate under the artificially shortened window the Legislature and the Defendant created through SB 1599 and its implementing administrative rule. Here, the state itself manufactured the timing problem that rendered the statutory "alternative" illusory. In addition to the distinctions addressed more fully below,

Fir Law Group
PO Box 35
Silverton, Oregon 97381
(503) 383-1640

*Kaplan* and *N.A.A.C.P., Los Angeles Branch* were both facial challenges to an underlying statutory fee regime. The instant case does not challenge the facial constitutionality of the fee at issue, rather it challenges the fee as applied to Plaintiffs when there is no practical or reasonable alternative.

In *Kaplan* and *N.A.A.C.P., Los Angeles Branch*, both California cases, the underlying statute required payment of fees but did not require the indigent to pay those fees in advance. *Kaplan v. Cnty. of Los Angeles*, 894 F.2d at 1078. Neither case specifically discusses the poor or disabled, nor do the cases discuss how a Court must rule in absence of a fee alternative. Defendant's Response also omits that *N.A.A.C.P., Los Angeles Branch* clearly states that it makes no findings as to how that case would apply to the indigent. ("The portion of the statute authorizing the County to require indigent candidates to reimburse printing costs after the election is not challenged in this suit, as plaintiffs specifically categorize themselves as neither indigent nor wealthy. We therefore issue no opinion as to the validity of the cost reimbursement system as it applies to indigent candidates.") *Id*. at 1321 n. 1.

*Kaplan* is plainly distinguishable. There, the Ninth Circuit upheld a county's requirement that judicial candidates pay their pro-rata share of printing and distribution costs to include voluntary statements in a local voter's pamphlet, characterizing the pamphlet as a limited public forum and finding the content-neutral, cost-recovery fee reasonable under rational basis review. The court emphasized that the fee did not bar ballot access or prevent candidates from campaigning through other channels, and it served the legitimate interest of avoiding taxpayer subsidization of optional candidate speech. Distinguishable from the facts at issue in the instant case, the statute at issue in *Kaplan* allowed publication prior to fee payment. Thus, the fee in

Fir Law Group
PO Box 35
Silverton, Oregon 97381
(503) 383-1640

*Kaplan,* unlike here*,* did not act as an outright bar to participation because it contained a relief valve (post payment after publication).

*N.A.A.C.P., Los Angeles Branch v. Jones*, 131 F.3d 1317, 1322 (9th Cir. 1997), is also plainly distinguishable. There, the Ninth Circuit considered similar facts as in *Kaplan*, but from the perspective of an organization rather than a candidate. Again, as in *Kaplan*, the statute at issue contained the same relief valve. "If a candidate is indigent, she is not required to pay the costs in advance, but she may be billed her pro rata share after the election." *N.A.A.C.P., Los Angeles Branch v. Jones*, 131 F.3d at 1321 (emphasis added).

Importantly, both *Kaplan* and *N.A.A.C.P., Los Angeles Branch* involved facial challenges to the constitutionality of requiring advance payment of fees for inclusion in the voters' pamphlet under ordinary election timelines. *See Kaplan*, 894 F.2d at 1078 (plaintiff sought declaratory judgment and injunction against the entire cost recovery system); *N.A.A.C.P., Los Angeles Branch*, 131 F.3d at 1319–20 & n.1 (expressly declining to decide how the statute would apply to indigent candidates). Neither case presented nor decided the narrow as applied challenge at issue here: whether the fee-plus-signature regime becomes unconstitutional when the Legislature and Defendant themselves compress the timeline so severely that the statutory "alternative" is illusory for vulnerable poor and disabled voters.

Plaintiffs do not disagree that the voters' pamphlet is a limited public forum. However, ORS 251.255, as applied here, fails *Kaplan*. The signature "alternative" is not an "ample channel of communication" when it is physically and practically impossible for a wheelchair-bound plaintiff subsisting on $1,400 per month to collect 500 signatures in seven days. The state's

Fir Law Group
PO Box 35
Silverton, Oregon 97381
(503) 383-1640

regime was no longer "narrowly tailored" once the Defendant compressed the normal window into a fiction.

    *Gebert v. Patterson*, 186 Cal. App. 3d 868 (Ct. App. 1986) remains applicable and persuasive here: to the extent the government charges a fee to participate in an election, there must be a reasonable alternative to the fee. Here, ORS 251.255 would ordinarily contain a perfectly reasonable relief valve for those who cannot afford to pay a $1,200 fee. That relief valve is the gathering of 500 signatures. ORS 251.255(2)(a). Consistent with *Lubin v. Panish*, 415 U.S. 709, 718 (1974), "[I]n the absence of reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay." Plaintiffs here do not disagree that the government may ordinarily charge a fee. However, when the government compresses the only alternative to paying a fee into an illusory process that is impossible for Plaintiffs, that fee becomes an unconstitutional burden on Plaintiffs ability to freely and fairly participate in Oregon's elections.

## II.    The alternative of gathering 500 signatures in lieu of paying a $1,200 fee is unreasonable and illusory to the poor and disabled among us.

    The so called "free" alternative under ORS 251.255(2)(a) is a illusory as applied to Mary Martin and the Class. Plaintiff Mary Martin is confined to a wheelchair and subsists on $1,400 per month in widow's benefits. *Decl. of Mary Martin* (ECF 2, Ex. 4.) She states under oath that it is impossible for her to gather 500 signatures within the time frame established by the Defendant. *Id*. Plaintiff had seven days to draft a statement, submit it to the Defendant, receive an official petition from back from the Defendant, begin collecting signatures, and then submit those signatures for approval or rejection. *Id*.

Fir Law Group
PO Box 35
Silverton, Oregon 97381
(503) 383-1640

Not once in his Response does Defendant address the reasonableness of his ordered timeframe. Indeed, the Defendant himself twice warned the Legislature in writing that moving the referendum to the May primary without proper safeguards would eliminate the normal 10-business-day free-argument submission window and make participation much harder for ordinary Oregonians (especially those without $1,200). *See* Compl., Exhibits 1, 2 (ECF 1). Those warnings were ignored. The result is exactly what *Lubin v. Panish*, 415 U.S. 709, 718 (1974), and *Gebert v. Patterson*, 186 Cal. App. 3d 868, 876 (1986), condemn. As applied, ORS 251.255, SB 1599A, and the Defendant's temporary administrative rule create a wealth-based barrier to core political speech with no reasonable alternative.

**III.    Plaintiffs are likely to succeed on ADA claims because the Defendant failed to make a Reasonable Accommodation.**

Defendant argues that Plaintiff was not excluded "by reason of" her disability because the fee and signature requirements are facially neutral and her exclusion stems from her financial circumstances. Def. Resp. at 9-10 (citing *Weinreich v. L.A. Cnty. Metro. Transp. Auth.,* 114 F.3d 976 (9th Cir. 1997)). This is wrong for two reasons. First, Defendant's own words create a contradiction with this position. In defending the $1,200 fee under the First Amendment and Equal Protection Clause, Defendant asserts that the 500-signature alternative "generally allows individuals who are indigent or otherwise unable to pay to participate in the limited public forum." *Id*. at 6. Yet on the ADA claim, Defendant insists the same signature requirement has nothing to do with disability and that Plaintiff's exclusion is solely financial.

More importantly, even assuming facial neutrality, the ADA independently requires public entities to make reasonable modifications to policies when necessary to afford disabled individuals meaningful access. 28 C.F.R. § 35.130(b)(7); *Tennessee v. Lane*, 541 U.S. 509, 532

Fir Law Group
PO Box 35
Silverton, Oregon 97381
(503) 383-1640

(2004) (applying Title II to voting-related programs). Plaintiff Martin's documented disability directly prevents her from collecting 500 signatures in the seven-day window the Secretary himself warned would be unworkable. *See* Decl. of Mary Martin (ECF 2, Ex. 4). This is the only non-monetary alternative available to Plaintiffs, and it is illusory. A simple, one-time modification would impose zero burden on Defendant. Defendant's refusal to provide that modification excludes Plaintiff "by reason of" her disability in violation of Title II.

Defendant relies on *Weinreich v. L.A. Cnty. Metro. Transp. Auth*., 114 F.3d 976 (9th Cir. 1997), for the proposition that Plaintiff's exclusion stems from financial circumstances rather than her disability. *Weinreich* is inapposite. There, the plaintiff was excluded for failing a neutral medical recertification requirement that his disability did not prevent him from satisfying. In *Weinreich*, the Plaintiff's only obstacle was collateral financial hardship. Here, by contrast, Plaintiff Martin's mobility disability directly prevents her physically collecting 500 signatures in seven days (the only alternative to a $1,200 payment). The ADA's reasonable-modification requirement therefore applies. 28 C.F.R. § 35.130(b)(7). Put plainly, if it is constitutionally mandatory to have a "fee alternative", the Defendant may not foreclose that alternative by failing to offer a reasonable accommodation.

**IV.     Plaintiffs will sufferable irreparable harm.**

The Plaintiffs' loss of access to the official Voters' Pamphlet is irreparable. The pamphlet is the one channel every Oregon voter receives from the state itself. Constitutional harms are presumed irreparable. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiff Martin has already shown under oath that she cannot use the only statutory alternative. Defendant does not dispute this fact.

Fir Law Group
PO Box 35
Silverton, Oregon 97381
(503) 383-1640

Social media and letters to the editor are not substitutes. Unlike those scattered, discretionary platforms, the Voters' Pamphlet is the sole state created and nonpartisan document that is mailed directly to every registered Oregon voter. It guarantees that every voter receives Plaintiffs' argument in the exact same official booklet they use to decide how to vote. Social media reaches only those who are online, is throttled by algorithms, and is unavailable to many elderly, disabled, or low-income voters who lack reliable internet or devices. Letters to the editor are subject to editorial gatekeeping, limited space, and tiny circulation compared to a pamphlet that lands in every mailbox. Once the pamphlet is printed and mailed without Plaintiffs' arguments, the harm will be permanent. This loss of core political speech in a unique governmental forum is irreparable harm. *Id*.

**V.    The balance of equities and public interest favor narrow relief at this stage.**

The relief requested is narrow. Plaintiffs ask the Court to waive the $1,200 fee and 500-signature requirement only for a small class of vulnerable, low-income and disabled voters who cannot comply with the compressed timeline created by SB 1599. Plaintiffs agree with Defendant that he has no authority to waive the fees and signature requirements at issue. Indeed, Plaintiffs filed this lawsuit precisely because the Court is the only option for the relief. Granting this relief would impose virtually no burden on the Secretary. The Voters' Pamphlet is already in production. The Defendant is not being asked to rewrite the law, but only to accept the arguments of those few Plaintiffs who physically cannot comply because of the compressed timeline the Legislature created.

Denying relief, however, would exclude some of Oregon's most vulnerable citizens from the one official document the State mails to every registered voter. The balance of equities and

Page 8 of 10 – PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER

the public interest strongly favor relief. Inclusive elections that give every citizen a meaningful voice outweigh rigid enforcement of a deadline that the Secretary himself warned would harm the Plaintiffs.

## CONCLUSION

Defendant's Response overlooks the central issue in this case: whether there exists a reasonable fee alternative for those low-income and disabled Oregonians who wish to submit an argument for the Voters' Pamphlet but cannot pay $1,200 and are physically unable to gather 500 signatures in seven days. For all of the reasons above, the seven day signature gathering requirement is not reasonable for the Plaintiffs.

Notably, Plaintiffs' motion does not ask this Court to invalidate SB 1599A. Plaintiffs seek only narrow, targeted relief: an order requiring the Secretary to waive both the fee and the signature requirement for the small class of vulnerable, indigent and disabled voters who cannot comply with either option. Plaintiffs' requested relief is exceedingly narrow and plainly reasonable. It imposes no meaningful burden on the Defendant while ensuring that Oregon's most vulnerable citizens are not shut out of the democratic process.

**DATED** this 10th day of March 10, 2026

>Respectfully submitted,

>**FIR LAW GROUP**

>/s/ *Ryan Adams*
>Ryan Adams, OSB 150778
>Fir Law Group
>PO Box 35
>Silverton, OR 97381
>(503) 383-1640
>ryan@firlawgroup.com
>*Of Attorneys for Plaintiffs*

Page 9 of 10 – PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

## CERTIFICATE OF SERVICE

I certify that on March 10, 2026, I served the foregoing PLAINTIFFS' REPLY TO

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY

RESTRAINING ORDER upon the parties hereto by the method indicated below, and addressed

to the following:

Thomas Castelli
Jacob Reisburg
100 SW Market Street
Portland, OR 97201
Oregon Department of Justice

Via **ESERVE** and **EMAIL** to:

thomas.castelli@doj.oregon.gov

and

Jacob.Reisberg@doj.oregon.gov

/s/ *Ryan Adams*
Ryan Adams, OSB 150778
Fir Law Group
PO Box 35
Silverton, OR 97381
(503) 383-1640
ryan@firlawgroup.com
*Of Attorneys for Plaintiffs*

Page 10 of 10 – PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER