IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARY MARTIN**, individually and *on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>**TOBIAS READ**, *in his official capacity as Secretary of State for the State of Oregon*,<br><br>Defendant. | Case No. 3:26-cv-433-SI<br><br>**OPINION AND ORDER GRANTING TEMPORARY RESTRAINING ORDER IN FAVOR OF NAMED PLAINTIFF ONLY** |

Ryan Adams, FIR LAW GROUP LLC, PO Box 35, Silverton, OR 97381. Of Attorneys for Plaintiffs.

Dan Rayfield, Oregon Attorney General; and Thomas H. Castelli and Jacob Reisberg, Senior Assistant Attorneys General, OREGON DEPARTMENT OF JUSTICE, 100 SW Market Street, Portland, OR 97201. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

In this putative class action, Plaintiff has moved for a temporary restraining order ("TRO") to enjoin the Oregon Secretary of State from enforcing Oregon Revised Statute ("ORS") 251.255(2)(a) against the named Plaintiff, so that her written argument regarding Measure 120 (Referendum Petition 2026-302) may appear in the statewide Voters' Pamphlet for the upcoming primary election scheduled for May 19, 2026. Based on the unique circumstances

PAGE 1 – OPINION AND ORDER GRANTING TRO

presented by the confluence of that statute, Oregon Senate Bill ("SB") 1599A, and Defendant's recently adopted, temporary Oregon Administrative Rule ("OAR") 165-016-9901, Plaintiff brings only an "as applied" challenge to ORS 251.255(2)(a) and disavows asserting any facial challenge to that law. Plaintiff contends that, as applied to her under the circumstances here, this law violates: (1) the Free Speech Clause of the First Amendment, made applicable to the states by the Fourteenth Amendment; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

As explained below, the Court finds serious questions going to the merits, a likelihood of irreparable injury to Plaintiff if prompt relief is not granted, and a balance of equities that tips sharply in favor of the named Plaintiff. Accordingly, the Court grants Plaintiff's motion and enjoins Defendant from enforcing against the named Plaintiff, Mary Martin, either of the two alternative conditions in ORS 251.255(2)(a) for publishing in the Oregon statewide Voters' Pamphlet her written argument regarding Measure 120. Stated another way, Defendant may not reject Ms. Martin's written submission filed on or before March 12, 2026, on the grounds that she has failed to comply with ORS 251.255(2)(a).

This relief, however, applies only to the named Plaintiff herself. As also explained below, the putative class has not moved for provisional certification, classwide relief is not needed to preserve the Court's jurisdiction, classwide relief is not necessary to provide the named Plaintiff with "complete relief," the balance of the equities would not tip sharply in favor of the putative class as a whole, and the Court has serious concerns about the specific wording of the proposed class definition.

## BACKGROUND[1]

On September 29, 2025, the Oregon Legislature passed House Bill ("HB") 3991, enacting a transportation funding package that raised the state gasoline tax from $0.40 to $0.46 per gallon, effective January 1, 2026. The bill also nearly doubled vehicle registration and title fees and temporarily doubled the payroll tax for public transit. Oregon Governor Tina Kotek signed the bill into law on November 7, 2025.

Citizens responded by launching Referendum Petition 2026-302, now known as "Measure 120." This campaign was led by State Representative Ed Diehl and others. Petitioners gathered more than 250,000 signatures, exceeding the 78,116 required under Oregon law for placement of a referendum on the ballot. Oregon Secretary of State Tobias Read verified and qualified the petition, placed it on the ballot for the general election scheduled for November 3, 2026, and the State then paused the challenged tax increases, consistent with Oregon law.

During the 2026 "short" legislative session, Senate Bill ("SB") 1599A was introduced and passed to move the referendum vote from the November 2026 general election to the primary election scheduled for May 19, 2026. The Secretary of State's office advised in a memorandum dated January 27, 2026, that any such move must include an emergency clause and be signed into law no later than February 25, 2026. The Secretary explained that this deadline was necessary to preserve at least ten business days for the public to submit arguments to be published in the state Voters' Pamphlet without paying the $1,200 filing fee.[2] When that deadline

---

[1] For purposes of the pending motion for temporary restraining order, the Court accepts the following facts presented by Plaintiff, which, also for purposes of the pending motion, Defendant has not disputed.

[2] Oregon law allows any person to file with the Secretary of State an argument supporting or opposing a state measure that will be voted upon at a general or primary election. Or. Rev. Stat. ("ORS") 251.255(1). Oregon law further provides: "A person filing an argument under this section shall pay a fee of $1,200 to the Secretary of State when the argument is filed or may

passed, the Secretary of State sent an email to legislative leaders on February 25, 2026, warning that every additional day of delay would compress statutory timelines, make it more challenging for his office to provide the free alternative to the $1,200 fee, and limit Oregonians' ability to make informed decisions and have their voices heard.

Governor Kotek signed SB 1599A into law on March 2, 2026. Shortly thereafter, Secretary of State Read issued a temporary administrative rule, OAR 165-016-9901, setting March 12, 2026, at 5:00 p.m. as the firm deadline for the submission of all Voters' Pamphlet arguments for the election to be held on May 19, 2026. Under ORS 251.255(2)(b), anyone seeking to submit an argument for publication must either pay $1,200 or gather 500 original "wet ink" signatures. The Secretary of State has no statutory authority to waive this requirement.

Plaintiff, Mary Martin, is a 73-year-old widow, confined to a wheelchair. She subsists on a fixed income of $1,400 per month in social security widow's benefits. In 2025, Ms. Martin gathered signatures to refer HB 3991 to Oregon voters in November of 2026. Because of that work, she desires to submit an argument about Measure 120 for inclusion in the statewide Voters' Pamphlet. Ms. Martin, however, can neither afford to pay the $1,200 fee nor does she possess the physical capacity to gather 500 original "wet ink" signatures in only the few days that are available to meet the filing deadline of March 12, 2026.

---

submit a petition in a form prescribed by the Secretary of State containing the signatures of 500 active electors. Each person signing the petition shall subscribe to a statement that the person has read and agrees with the argument." ORS 251.255(2)(a). Properly qualifying arguments will be published and distributed in a statewide Voters' Pamphlet. *See* ORS 251.026. For the May 2026 election, the statewide Voters' Pamphlet must be mailed to voters not later than April 29, 2026. *See* ORS 251.175. To be included in that Voters' Pamphlet, arguments must be submitted to the Secretary of State not later than March 12, 2026. *See* ECF 1 at 24-25; OAR 165-016-9901). Although neither Oregon law nor Oregon administrative regulations use the term "wet ink," the required signatures must be verified by appropriate election officials.

PAGE 4 – OPINION AND ORDER GRANTING TRO

## STANDARDS

In deciding whether to grant a motion for a TRO, courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish [1] that it is likely to succeed on the merits, [2] that it is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in its favor, and [4] that an injunction is in the public interest." *Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1122-23 (9th Cir. 2024) (brackets omitted) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "When the government is a party, the last two factors (equities and public interest) merge." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021); *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"The first factor—likelihood of success on the merits—is 'the most important.'" *Apache Stronghold v. United States*, 101 F.4th 1036, 1049 (9th Cir. 2024) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc)). The preliminary injunction factors are evaluated on a "sliding scale," however, such that "a stronger showing of one element may offset a weaker showing of another." *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 844 (9th Cir. 2024) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). "Alternatively, a preliminary injunction may issue where 'serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor' if the plaintiff 'also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'" *Id.* (quoting *All. for the Wild Rockies*, 632 F.3d at 1135).

Further, "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary

injunction proceedings." *Herb Reed Enters., LLC v. Florida Entmt. Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

## DISCUSSION

### A. Serious Questions Going to the Merits

In *Kaplan v. County of Los Angeles*, 894 F.2d 1076 (9th Cir. 1990), the Ninth Circuit considered a challenge brought by Judge Leon S. Kaplan of the Los Angeles Superior Court to a California law that allows a county to charge fees to candidates for political office for costs associated with the publication of election statements in the county's voters' pamphlet. The statute also provided that, "if a determination is made that the candidate is indigent, he or she is not required to pay the costs in advance." *Id.* at 1078. The Court held that a voters' pamphlet was a limited public forum, was content neutral, and satisfied the applicable lesser level of scrutiny because it served a significant state interest in a narrowly tailored fashion and left open ample alternative channels of communication. *Id.* at 1080. Against a facial challenge to the law, the Ninth Circuit held that the cost recovery system did not violate the First Amendment, explaining:

> The statute is narrowly drawn in that the local agencies can recover actual costs alone, and cannot profit from the publication charges nor finance election costs with them. *The statute exempts the indigent from cost liability* and leaves open a variety of alternative means for a candidate to transmit his statement to voters. *In light of these factors, we deem the cost recovery system constitutional under the First Amendment.*

*Id.* at 1081 (emphases added). The court also rejected the plaintiff's argument that "the cost recovery system runs afoul of the Fourteenth Amendment's equal protection clause." *Id.* The Court said that "[n]o candidate is excluded from being listed on the ballot by virtue of the cost recovery system." *Id.* at 1082. The Ninth Circuit followed *Kaplan* and arrived at the same result in *NAACP, Los Angeles Branch v. Jones*, 131 F.3d 1317 (9th Cir. 1997).

Thus, there is no basis for a facial challenge to ORS 251.255(2)(a) under either the Free Speech Clause or the Equal Protection Clause. But neither *Kaplan* nor *NAACP* considered an "as applied" challenge to a statutory scheme involving voters' pamphlets that provides an alternative path for indigent persons when, based upon a confluence of highly unusual facts, that alternative path is, as a practical matter, unavailable. The Court has located no case law addressing this situation, and the parties have cited none. Accordingly, at a minimum, there are serious questions going to the merits in the as applied challenge present here.

Plaintiff also contends that when the Oregon statute is applied under the unique facts present here, that law violates Title II of the ADA and, thus, is unenforceable under the Supremacy Clause. U.S. CONST., art. VI, cl. 2. In relevant part, Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

In response, Defendant cites *Weinreich v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976 (9th Cir. 1997). In that case, the Ninth Circuit upheld a challenge under the ADA to a regional public transit system's program for elderly and eligible patrons. The plaintiff qualified for the program after receiving a doctor's certification that he was permanently disabled. A new rule of the program, however, required updated medical certification, which the plaintiff alleged he could not afford. The plaintiff requested an exemption from the recertification requirement based on his indigency, which the defendant denied. The district court concluded that the defendant had no obligation under the ADA to grant the plaintiff an exemption from recertification. *Id.* at 978. The Ninth Circuit affirmed, explaining:

PAGE 7 – OPINION AND ORDER GRANTING TRO

> Weinreich's exclusion from the Reduced Fare Program was not based on the fact or perception that he has a disability. To the contrary, his exclusion was based on the possibility that he does not have a qualifying disability. Specifically, his exclusion was based on his failure to provide updated certification that he has a qualifying disability. Weinreich's inability to provide updated certification was due to his financial circumstances, not to his medical disability. Thus, the MTA's recertification policy did not discriminate against Weinreich on the basis of disability, and the MTA is not required under the ADA or Rehabilitation Act to make reasonable modifications to the Program's eligibility requirements for Weinreich.

*Id.* at 979.

In *Smith v. City of Oakland*, 612 F. Supp. 3d 951 (N.D. Cal. 2020), U.S. District Judge Jon Tigar rejected the City of Oakland's attempt to compare Smith's claims to the facts in *Weinreich*. In *Smith*, the court stated:

> The City's attempt to compare Plaintiffs' allegations to those in *Weinrich* [sic] *v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976 (9th Cir. 1997) fails because it improperly frames the harm that Plaintiffs allege. In Weinrich, a public transit system's policy requiring disabled patrons to recertify their disabilities every three years in order to qualify for reduced fare discriminated against these patrons not "by reason of" their disability but based on their financial circumstances. *Id.* at 979. The City argues that, as in *Weinrich*, "Plaintiffs' alleged inability to obtain more affordable, accessible housing is a function of economics, specifically housing scarcity – not disability." ECF No. 20 at 14. However, as discussed above, Plaintiffs do not allege "inability to obtain more affordable, accessible housing" but rather exclusion from a municipal program that is available to non-disabled residents.

*Id.* at 965.

Under ORS 251.255(2)(a), the State offers two alternative pathways to anyone seeking to submit arguments to be published in the statewide Voters' Pamphlet. One pathway requires payment of a fee of $1,200; the other requires timely submission of 500 valid signatures of active electors. The first pathway is open to anyone, regardless of disability. Plaintiff does not argue

PAGE 8 – OPINION AND ORDER GRANTING TRO

that the second pathway as well is open to everyone regardless of disability—provided that the normal, or typical, timeframe is available. Here, Plaintiff contends, because of a confluence of unique factors, that time has been shortened to just a few days, which Plaintiff maintains makes the second pathway inaccessible to disabled persons like her. To that extent, Plaintiff asserts, the second pathway, which is a governmental program or service under Title II of the ADA, is denied to people like Plaintiff because of their disability. Ultimately, that argument may or may not succeed, but the Court concludes that it raises serious questions going to the merits.

## B. Irreparable Harm

A plaintiff seeking a preliminary injunction must demonstrate that irreparable injury is likely in the absence of preliminary relief. *Winter*, 555 U.S. at 22. Mere possibility of harm is not enough. *Id.* As the Ninth Circuit has stated, however, "[a] colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). Here, Ms. Martin desires her voice to be heard in the statewide Voters' Pamphlet for the primary election to be held in May 2026. If she is entitled to that under the Free Speech Clause, the Equal Protection Clause, or the ADA, and if such a right is denied to her at this time, there will be no remedy available at the conclusion of this lawsuit. This is enough to show a likelihood of irreparable injury.

## C. Balance of Equities and Public Interest

Because the Court has found only serious questions going to the merits and not a substantial likelihood of success, Plaintiff must show that the balance of hardships tips sharply in her favor. *See Planned Parenthood*, 122 F.4th at 844. Denying preliminary injunctive relief to Plaintiff would work a serious hardship on her because having her argument published in the statewide Voters' Pamphlet is likely the most efficient and effective way to have her voice heard by others. Further, if the Court grants relief only to the named Plaintiff and not to the putative

PAGE 9 – OPINION AND ORDER GRANTING TRO

class, then the hardship to Defendant is *de minimis*. On the other hand, granting preliminary injunctive relief to the entire putative class could result in the imposition of a substantial hardship on Defendant. Accordingly, regarding the decision of whether to grant preliminary injunctive relief only to the named Plaintiff, the balance of hardships tips sharply in her favor.

### D. Scope of Relief

Under certain circumstances federal district courts "may issue temporary relief to a putative class." *AARP v. Trump*, 605 U.S. 91, 98 (2025). In *AARP*, for example, the Supreme Court stated that the "Court may properly issue temporary injunctive relief to the putative class in order to preserve [its] jurisdiction pending appeal." 605 U.S. at 97. The Ninth Circuit has cited *AARP* for the same proposition. *See Vasquez Perdomo v. Noem*, 148 F.4th 656, 688 n.15 (9th Cir. 2025) ("[T]he Supreme Court recently held that even before a class is certified— 'provisionally' or otherwise—courts 'may properly issue temporary injunctive relief to the putative class in order to preserve [their] jurisdiction pending appeal.'" (quoting *AARP*, 605 U.S. at 97)). Classwide relief may also be appropriate before certification when it is necessary under the complete-relief principle. "The equitable tradition has long embraced the rule that courts generally may administer complete relief between the parties." *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025) (cleaned up). Thus, the relevant question under the complete-relief principle "is whether an injunction will offer complete relief *to the plaintiff[ ] before the court*." *Id.* at 852 (emphases in original).

Neither of these avenues apply here. But for a potential mootness problem arising after the May 2026 election concludes, the Court will maintain jurisdiction regardless of whether preliminary injunctive relief is afforded only to the named Plaintiff or is given to the putative class. Further, the Court need not give preliminary injunctive relief to the putative class to provide complete relief to Ms. Martin.

PAGE 10 – OPINION AND ORDER GRANTING TRO

Further, a plaintiff may move for provisional class certification. "A district court can 'certify a provisional class for purposes of a preliminary injunction.'" *Vasquez Perdomo*, 148 F.4th at 688 n.15 (cleaned up) (quoting *Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1040 (9th Cir. 2012)). As Professors Newberg and Rubenstein explain, the "provisional" label "is meant to reference the duration of the order"—that "the certification will dissolve if the injunction does." 2 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 4:30 (6th ed.). To provisionally certify a class, a district court must undergo the same rigorous Rule 23 analysis that applies to an ordinary class certification. *See id.* ("[C]ourts that label preliminary certification 'provisional' employ that term . . . *not* to suggest they undertook less than a full Rule 23 analysis." (emphasis in original)). Here, however, Plaintiff has not filed a motion for class certification, provisional or otherwise.

Finally, in her Complaint, Plaintiff defines the putative class as follows:

> All low-income and/or disabled Oregon voters who wish to submit a ballot argument for or against Referendum Petition 2026-302 in the official Voters' Pamphlet but are unable to pay the $1,200 fee and cannot realistically gather 500 original wet-ink signatures by March 12, 2026 due to indigency, disability, geographic location, or other barriers.

ECF 1 at ¶ 20. The Court sees several potential problems with this class definition, including problems caused the use of "and/or" and "or." The Court, however, need not spend any further time on this issue now because Plaintiff has not yet moved for class certification.

## CONCLUSION

The Court GRANTS Plaintiff's Motion for Temporary Restraining Order (ECF 2) to provide relief only to the named Plaintiff, Mary Martin, and hereby enters the following Order.

PAGE 11 – OPINION AND ORDER GRANTING TRO

## TEMPORARY RESTRAINING ORDER

1.      The Court enjoins Defendant from enforcing ORS 251.255(2)(a) against the named Plaintiff, Mary Martin, either of that statute's two alternative conditions for publishing in the Oregon statewide Voters' Pamphlet for the May 2026 election Ms. Martin's written argument regarding Measure 120. Stated another way, Defendant may not reject Ms. Martin's written submission on the ground that she has failed to comply with ORS 251.255(2)(a).

2.      In the interest of justice, Ms. Martin need not provide any security, and the Court waives all requirements under Rule 65(c) of the Federal Rules of Civil Procedure.

3.      This Order expires fourteen (14) days after entry, unless otherwise extended by stipulation of the parties or further Order of the Court.

**IT IS SO ORDERED.**

DATED this 11th day of March, 2026, at 3:35 p.m.

Michael H. Simon
United States District Judge